MARY HEBERT v. JOSEPH TURGEON and Another.[1]

June 21, 1901.

Nos. 12,664—(159).

**Foreclosure of Mortgage—Default in Condition.**

Held, in an action to set aside the foreclosure of a mortgage upon real estate under a power of sale therein contained, and to obtain further relief, that the trial court erred in its finding of fact, and conclusion of law based thereon, to the effect that there was no default in the conditions of the mortgage when the foreclosure proceedings were instituted.

Action in the district court for Anoka county to set aside the

[1] Reported in 86 N. W. 757.

foreclosure of a real estate mortgage. The case was tried before Giddings, J., who found in favor of plaintiff. From a judgment entered pursuant to the findings, defendants appealed. Reversed.

*John B. Olivier* and *A. E. Bowe*, for appellants.

*Harold Harris* and *George C. Lambert*, for respondent.

COLLINS, J.

The defendants, husband and wife, were the owners of eighty acres of land in question in February, 1890, on which was a dwelling house, then and at the time of the trial occupied by them. They had become old and infirm, and on the 10th day of that month entered into an agreement with Frank Hebert and Mary, his wife, she being the defendants' daughter, and the present plaintiff.

This agreement was evidenced—First. By a deed of the real estate whereby the defendants conveyed the same to Frank Hebert in fee simple, and also by a delivery to him of a quantity of personal property then on the place, and belonging to defendants. Second. By a contract of maintenance, whereby Hebert and his wife agreed to provide a comfortable home, support, lodging, clothing, fuel necessary and proper for their comfort, medical attendance and medicine in case of sickness for defendants, as long as both or either should live, and that on or before four months therefrom they would build or cause to be built a two-room dwelling house near the one in which defendants were then living, into which they were to move and make their home, there to be supported and maintained as before stated. It was also stipulated in the contract that, in the event of the desire or election of defendants to remove from said premises, then, and in lieu of all the provisions of the contract of maintenance before mentioned, Hebert and his wife were to pay to them an annuity of $200 if both should be living, or, in the event of the death of either one, an annuity of $100 to the survivor, which annuity should be paid in cash, and in quarterly instalments, from the date of such election, during life. The performance of the contract was, according to its terms, to be secured by a mortgage upon the eighty acres, to be executed and delivered by Hebert

and his wife to defendants, and it was stipulated that, in case of default or neglect on the part of the former faithfully to perform and fulfil according to the contract each and all of the conditions, agreements, and covenants therein provided for, and to be kept and performed by the mortgagors, and by reason of such default a foreclosure of the mortgage became necessary, the sum of $2,500 in case both of the old people were then living, or one-half thereof in case one had deceased, should be the amount due and payable on the mortgage for all purposes of foreclosure. Third. By a mortgage on the eighty acres in the ordinary form executed and delivered, in which the Heberts were mortgagors and defendants mortgagees, containing the usual conditions, and, in addition thereto, covenants that the mortgagors would pay all taxes upon the lands on or before the day appointed by law for the sale of the premises for such taxes, and also keep the buildings on the premises insured at all times in some first-class stock company for at least the sum of $1,000, payable, in case of loss, to the mortgagees to the amount then secured by the mortgage. And there were the usual provisions in case the mortgagors should fail to pay the taxes and to maintain the agreed insurance. It was further provided that, in case default should be made in any of the conditions or covenants contained in such maintenance agreement, and such default should continue for a space of thirty days, then and from thenceforth it would be legal for the mortgagees to consider the whole sum secured by the mortgage as immediately due and payable, and to proceed to enforce the collection of the same by foreclosure in accordance with the statute or otherwise.

These instruments were duly recorded. The Turgeons, mortgagees, continued to reside in the house then occupied by them, and the four-months period in which the Heberts were to build the new house expired without any action upon their part looking towards a compliance with this part of the contract. Shortly after this, the premises were conveyed, through a third party, to the plaintiff. Frank Hebert died November 24, 1897. May 3, 1898, the Turgeons, as mortgagees, caused to be made and published a notice of foreclosure, alleging default in the mortgage,

and giving notice that under the power of sale therein contained the mortgaged premises would be sold at public auction June 27, 1898, at the hour and place therein stated, to satisfy the amount alleged and claimed to be due, namely, $2,500, with interest and costs. A sale was made under this notice to one of the mortgagees—Joseph Turgeon—for $2,600.50. The sheriff executed and delivered a certificate of sale and an affidavit thereof, which with an affidavit of publication of the notice and affidavit of disbursements, made in proper form, were placed upon record in due time.

Some time afterward—just when does not appear—this action was brought to set aside such foreclosure as irregular, unauthorized, and void; to obtain a decree of the court adjudging that no default had been made in the conditions of the mortgage, either as stated in the notice or otherwise; that all of the conditions of the maintenance contract had been faithfully performed on the part of the plaintiff and her husband; to have this contract reinstated, and declared to be in full force; and to have the sum which this plaintiff claimed had been paid thereon adjudged to have been so paid. The answer put in issue the allegation that all of the conditions of the maintenance contract had been performed, but admitted the allegations of the complaint as to the foreclosure proceedings. It alleged that the Heberts were in default in their annuity payments when the foreclosure proceedings were instituted, had failed to pay taxes for the year 1897, and had also failed to keep the buildings insured as agreed upon, and set up various other matters not here material. A trial was had by the court without a jury in April, 1899, and upon its findings of fact judgment was ordered for plaintiff as demanded in the complaint.

This appeal is from a judgment entered after defendant's motion for a new trial had been denied. This judgment will have to be reversed, and a new trial had, because of palpable error in the findings of fact. The court necessarily found that the two-room house had not been built, as agreed upon. It also found that all of the quarterly payments, commencing at the time of the election by the Turgeons to accept the annuity, instead of support, had been paid in cash down to and including

December 21, 1897; in all, the sum of $1,450. It also found that no other cash payments had been paid. It follows that the quarterly payment due in March, 1898, was not paid in cash, had been due more than thirty days when the foreclosure proceedings were commenced, and that default had occurred in this respect, at least, unless the views of the court below are accepted, and the apparent default thus excused. As an excuse the court found that from September 21, 1890, to December 21, 1897, the Turgeons occupied the old house; that it had been furnished by the Heberts all of this time for their sole use and occupancy; and that during the same period the latter had furnished for the former a considerable quantity of wood, although not required to do either under the contract. It also found that the use or rent of the house and the value of the wood so furnished were, together, reasonably worth and of the value of $300; that the Turgeons were properly chargeable with that sum and amount on account of the annuity; and, solely by reason of these facts, that the annuity was overpaid when the foreclosure proceedings were begun, and hence that there was no default on the part of the mortgagors at that time. Its conclusion of law was that this plaintiff was entitled to have such amount applied on account of and as payment on the annuity, the result being that the Turgeons were brought in debt to plaintiff in quite an amount at the time of foreclosure.

When considering the admitted failure of the Heberts to build the new house, which, had it been built, might have been of controlling interest while the old people were deliberating as to an election to take the annuity instead of support, the trial court was of the opinion that there had been a waiver by the latter of this condition; and this was probably correct. It may well be said that when defendants elected to take the annuity they waived all claim to an enforcement of the condition as to the building of the new house, which condition had already been broken. They had a right to elect to take the annuity, and when this was done a new relation existed between the parties, in which the building of a new house had no part. But we are clearly of the opinion that the trial court erred in making the

finding as to plaintiff's claim to compensation for the occupancy of the house, and also erred in its conclusion of law based thereon. It had no right whatsoever—lawfully or equitably—to charge up the rental value of that house as against the annuity payments.

The proof shows that when the Turgeons elected to take the annuity, in lieu of support, they were living, as they had been for years, in the house in question. From that time on they continued to reside there, the Heberts living with them a small portion of the time, and then removing to St. Paul, where they resided for five years. On their return to the farm they moved into a small house, which it seems they built just before that time for their own use. During all these years, and up to December, 1897, they made quarterly payments, each of $50, to the Turgeons, somewhat irregularly, but as to that no objection was made, and during this period of about seven years they did not question the right of occupation of the house by the old people, and never in any way indicated that any claim was to be made for rent, or that the occupancy was anything but a gratuity. Under the maintenance contract the Turgeons were to remove from the farm in case they should elect to take the annuity, and upon their election the Heberts could have insisted upon such removal. They did not suggest such a change in any manner. A few months after Mr. Hebert's death this plaintiff informed the Turgeons that she not only proposed to keep the land, but would make no further payments on it, having been advised that payments were unnecessary. Later she seems to have reconsidered this, and to have proposed to make a payment, the amount being indefinite. She made none, and made no tender, and evidently until about the time of this suit was brought intended to abandon all claim to the land, except such as she could assert by reason of payments made before her husband's death.

From the record it is apparent that these claims for rent and wood were devised, after this action was contemplated, solely to avoid the consequences of a failure to make quarterly payments after December, 1897, and long after all claims for rent, at least, had been waived, if any of the contract conditions could be

waived by acts of the parties. Such a claim, made at a late day, in order to relieve plaintiff from the consequences of her own failure to keep up the payments, is unjust, and not to be tolerated, especially in view of the fact that these old people, infirm and unable to work, had parted with all they had in order to receive, in quarterly cash payments, sums of money barely enough to keep them alive and together, for the few years yet remaining to them. The injustice done by the trial court is particularly apparent when we consider that by this method of paying the annuity their means of subsistence for one and a half years was wholly taken away. The conclusion of the trial court cannot be upheld. The annuity was to be paid in cash, and, unless the Turgeons consent, nothing can be substituted for cash.

We have stated all that appears in the record concerning the foreclosure. There was no allegation in the pleadings, and the court did not find, that the mortgage was duly foreclosed, or that a copy of the notice of the foreclosure had been served upon the plaintiff, who was then, and up to the time of the trial, residing in the new house, and actually occupying the premises. It did find what was alleged in the complaint, namely, the facts heretofore stated as to the publication of the notice, the sale, the execution, delivery, and record of the certificate of the sale, which certificate was dated June 27, 1898, and the affidavits. But it went no further, and for this reason it nowhere appears that the foreclosure proceedings were regular, or that they were valid. In fact, it would seem that there was a very serious omission in the procedure. At this point we call attention to the fact that this action was brought and a trial thereof had before the year of redemption from the sale had expired. Therefore G. S. 1894, § 6054, relating to the prima facie character of a sheriff's certificate, does not apply. It was essential, in order properly to foreclose under the power, that the notice required by G. S. 1894, § 6032, be served upon the plaintiff. This may have been done, as asserted in the brief of defendants' counsel, but we have nothing before us to show it. For this reason the alleged foreclosure must be treated here as a nullity, and of no

effect. It is, therefore, unnecessary for us to consider the legal effect of a valid foreclosure of the mortgage in question.

With a view to a new trial, we deem it proper to say that, as we now regard the law, the mortgagors were also in default in failing to keep the buildings upon the premises insured, with loss, if any, payable to the mortgagees, as they had agreed to do. The court found that the buildings were insured, but that the policies did not contain a clause making the loss, if any, so payable; and, further, that the contract did not require that the insurance policies should contain such a clause. In this the court was clearly mistaken. It must have overlooked an express provision to that effect in the contract for maintenance, which provision we have heretofore stated in substance. Counsel for plaintiff, to avoid the effect of this error in the findings, have called attention to the case of Ames v. Richardson, 29 Minn. 330, 13 N. W. 137, in which it was held that, where a mortgage contains a covenant to insure, with the loss, if any, payable to the mortgagee, and the property is insured and is destroyed, such mortgage is an equitable lien upon the insurance money, and the mortgagee may recover the amount thereof, to be applied upon his mortgage debt. This decision has no bearing upon the question here involved. The fact that a mortgagee may have an equitable lien upon insurance money in case of loss by fire, under such circumstances, and may recover by action the amount of the loss to the extent of the insurance, is no excuse for a failure on the part of these mortgagors to comply with the terms of their agreement, and does not avoid a default in the conditions of the mortgage.

The question before us is not as to the defendants' equitable rights, but solely as to their contract rights. The contract was to insure, with the amount of the policy payable, in case of loss, to the mortgagees. It was not a contract to insure in such a manner as to afford to the mortgagees a right of action to recover the amount of insurance in case of loss. Counsel have also referred us to 2 Jones, Mortg. § 1175, in which the law is thus stated:

"But where the mortgage merely provides that the mortgagor

shall pay the taxes upon the premises, and in default of so doing, that the mortgagee may discharge the same, and collect them as a part of the mortgage debt, then the failure of the mortgagor to pay them is not such a default as will give the right to foreclose."

Again the authority is not in point. This mortgage did not merely provide that, if the mortgagors failed to insure, the mortgagees might collect an amount paid by them for insurance as part of the debt. The operative and binding provision was that, if default should be made in any of the conditions or covenants contained in the maintenance agreement, on the part of the mortgagors to be kept and performed, and such default should continue for the space of thirty days, then, and in that case, the mortgagees might foreclose.

Another matter which it may be proper to consider with reference to a new trial is the claim that there was default in the payment of the taxes. There was none, for the agreement was that the mortgagor should pay on or before the day on which the lands could be sold for nonpayment of taxes. As to the taxes of 1897, that day had not arrived when the foreclosure proceedings were commenced. We see no reason for any further consideration of the case.

The judgment is set aside, and a new trial ordered.