## MILTON D. CRAIGMILE AND ANOTHER v. ADOLF O. W. SORENSON AND ANOTHER.[1]

February 11, 1954.

No. 36,214.

*A. D. Bornemann* and *Harry H. Peterson,* for relators.
*Lyman A. Brink* and *Philip E. Thorson,* for respondents.

PER CURIAM.

On May 29, 1953, we upheld the validity of a contract for deed conveying land in Kittson county (case No. 36,017). The contract, dated April 16, 1951, was executed by Adolf O. W. Sorenson and wife, as vendors, and Milton D. Craigmile and wife, as vendees. Craigmiles immediately went into possession and have since resided upon and retained possession of the property.

On July 11, 1953, Sorensons commenced proceedings to cancel the contract for deed under M. S. A. 559.21 to 559.214. The notice of cancellation claimed default for:

(1) Failure to pay the down payment and to pay installments on principal and to pay interest in compliance with the contract.

(2) Failure to keep the buildings insured in accordance with the terms of the contract.

(3) Failure to pay taxes due in the year 1952.

The contract for deed specified a purchase price of $17,500 and provided for a down payment of $2,500 and monthly payments of $500 starting November 1, 1951. No specific amounts claimed in default were set forth. With reference to insurance, the contract provided merely that purchasers should keep the buildings on the premises at all times insured in some reliable insurance company or companies to be approved by the vendors against loss by fire and windstorm for the insurable value thereof.

On July 23, 1953, Craigmiles tendered to Sorensons all installments due under the contract including the down payment plus interest at the rate of four percent; taxes paid by defendants in 1952 plus interest thereon at the rate of six percent; fire and windstorm insurance policies on the buildings in the sum of $9,950; and

the cost of the service of the notice of cancellation. The specific sums tendered were as follows:

Principal installments due on the contract to date........$4,500.00
Interest at the rate of four percent on the contract price
    from April 16, 1951, to July 23, 1953 ................. 1,590.00
Taxes paid by defendants October 3, 1952 ................ 319.92
Interest on the taxes at the rate of six percent to July 23,
    1953 ......................................... 14.40
Cost of service ....................................... 4.50
Fire insurance, Hallock Farmers Mutual Fire Insurance
    Company, with contract for deed clause .............. 9,950.00
Windstorm insurance policy, Minnesota Farmers Mutual
    Insurance Company, with contract for deed clause...... 9,950.00

The above tender was refused by Sorensons.

Thereafter on July 28, 1953, Craigmiles commenced action for a declaratory judgment adjudging the rights and status of plaintiffs under the contract for deed and the amount then due under the contract for deed, together with all terms and conditions to be met by plaintiffs. In conjunction therewith Craigmiles, as plaintiffs, served notice of motion based upon the complaint and affidavits for an order enjoining Sorensons, as defendants, from taking any further proceedings under the notice of cancellation until the outcome of the action; determining the amount due under the contract; directing defendants to inform plaintiffs of the defaults and insurance policies claimed under such contract; and authorizing plaintiffs to deposit with the clerk of the district court a sum sufficient to cover such defaults as well as the required insurance policies to comply with the terms of the contract. Plaintiffs also served notice of the taking of the deposition of defendants.

On July 31, 1953, an order was made by the district court granting Craigmiles the right to take depositions. On August 6, 1953, the motion for temporary injunction came on for hearing. The district court then proceeded, over defendants' objections, to take the depositions of defendants. Thereafter on the same date, the court made its order:

(1) Denying defendants' motion for dismissal of plaintiffs' motion;

(2) Restraining defendants, and each of them, from taking any further proceedings under notice of cancellation of the contract until a final determination of the action;

(3) Providing that plaintiffs give bond in the sum of $1,500 "with sureties approved by the Clerk of District Court of Kittson County, Minnesota, conditioned for the payment to the defendants of such damages as the defendants shall sustain by reason of this Order," if the court finally decides that plaintiffs were not entitled thereto; and

(4) Directing the clerk of court to issue a writ of injunction as above provided.

The order further specified:

"That whereas the defendants herein have agreed in open court to furnish to the Court a statement of principal and interest now claimed to be due upon said contract necessary to remove the plaintiffs' default, together with a statement of the amount of taxes and interest claimed by the defendants to be due, and a statement of the insurance which the defendants would approve as a condition for the removal of the plaintiffs' default, the remaining relief prayed for in the plaintiffs' motion be and the same hereby is denied; provided, however, that in the event that the defendants fail or neglect to comply by August 7, 1953, then and in such event the Court retains jurisdiction of the parties hereto and the subject matter herein involved and reserves unto itself the right to issue such further order herein as the Court deems equitable and just."

Plaintiffs thereupon gave bond in the sum of $1,500, signed as obligor by plaintiff Milton D. Craigmile only, with sureties approved by the clerk of the district court of Kittson county, conditioned for the payment to defendants as required by the order of August 6, 1953.

Defendants thereafter furnished the court with a statement of the amount which was due on the contract for deed, including taxes, and of the insurance required and names of the companies acceptable therefor. Craigmiles thereupon went to the farm of the Soren-

sons with the cash and required insurance policies with the object of delivering them to defendants and reinstating of the contract. When they arrived at the home, they found that Sorensons had left the farm and the vicinity and were nowhere to be found. Thereupon they tendered the money claimed due and the policies to A. D. Bornemann, attorney for Sorensons, but he refused to accept the same.

On August 8, 1953, in ex parte proceedings, plaintiffs set forth the foregoing in affidavit form and moved that the court forthwith designate an agent for defendants to whom plaintiffs might pay the money and deliver the insurance policies claimed to be in default under the contract. On August 8, 1953, upon said motion, the court made its order:

"* * * that Roy H. Coleman, Clerk of the District Court within and for the County of Kittson and State of Minnesota, be and he hereby is designated and appointed *the agent* of the Defendants upon whom the Plaintiffs herein may make such tender as said Plaintiffs deem sufficient to remove the conditions of the Plaintiffs' default * * *.

* * * * *

"* * * that in the event * * * Defendants * * * continue to absent themselves from their usual place of abode so that the Plaintiffs herein cannot make tender upon them up to and including five (5) o'clock P.M. on August 10, 1953, then, * * * said Roy H. Coleman * * * is * * * designated as the depository of this Court and * * * is * * * ordered and directed to accept the plaintiffs' tender, receipt therefor, and to hold the same as the depository of this Court in the regular depository of the clerk until the further order of this Court.

"* * * that such tender so made upon the said Roy H. Coleman shall be deemed a tender by the Plaintiffs to the Defendants."

On August 10, 1953, after three additional visits to defendants' farm home to tender to them the amounts in default and the insurance policies, without finding defendants there, plaintiffs deposited the same with the clerk of the district court. Thereafter, the com-

plaint in the action for declaratory judgment and restraining order were amended to show the additional facts above set forth.

Defendants thereupon applied to this court for a writ of prohibition commanding the district court of Kittson county, the Honorable Paul A. Lundgren, one of the judges thereof, and the plaintiffs to refrain from any further proceedings relative to the enforcement of the temporary injunction or the performance of acts of agency by the clerk. This court thereupon issued a writ of prohibition and directed the district court and the parties described above to show cause on or before October 19, 1953, why such writ should not be made absolute.

Defendants, who are the relators here, contend that the writ should be made absolute because:

(1) The bond in the sum of $1,500 given by plaintiffs when the temporary injunction was issued was not in compliance with § 585.04 and, hence, renders the temporary injunction null and void, in that

(a) It was signed by only one of the plaintiffs, Milton D. Craigmile; and

(b) The district court could not delegate authority to approve such bond to the clerk of the district court.

(2) The cancellation proceedings having been instituted under §§ 559.21 to 559.214, the district court was without power to interfere with the same and, hence, exceeded its authority in issuing the restraining order described.

The Honorable Paul A. Lundgren, judge of the district court of Kittson county, and plaintiffs in the original action filed their return here October 16, 1953. After setting forth the facts as above, they contended:

(1) That, if the bond given by plaintiffs was inadequate or defective, the proper remedy for defendants, who are the relators here, was to move for dismissal of the proceedings in the district court rather than to apply for a writ of prohibition here.

(2) That, in view of relators' actions in preventing Craigmiles from removing the default claimed under the contract as authorized

by § 559.21, the district court did not exceed its power in issuing the challenged restraining order.

(3) That, in the absence of a showing that relators would suffer irreparable injury because of the restraining order, there is no proper basis for the issuance of the writ of prohibition here.

■ Defendants urge that the bond is inadequate because it was not approved by the court and because both plaintiffs did not sign as obligors thereon. The rule seems well established, however, that omissions and discrepancies in bonds of this kind should be corrected by motion in the district court rather than by writ of prohibition here. See, O'Reilly v. Edrington, 96 U. S. 724, 24 L. ed. 659; Bowlesville Min. & Mfg. Co. v. Pulling, 89 Ill. 58; St. John v. President & Trustees of N. Utica, 157 Ill. App. 504; State ex rel. Leary v. District Court, 78 Minn. 464, 81 N. W. 323. As stated in O'Reilly v. Edrington (96 U. S. 726, 24 L. ed. 659) :

"* * * but, as the omission was undoubtedly caused by the order of the court permitting the clerk to take the bond, the case is a proper one for the application of the rule by which this court sometimes refuses to dismiss appeals and writs of error, except on failure to comply with such terms as may be imposed for the purpose of supplying defects in the proceedings. * * *

"* * * The security may be approved by any judge or justice authorized to sign a citation upon an appeal in the cause; but this cause will stand dismissed, unless the appellant shall, on or before the first Monday in March next, file with the clerk of this court a bond, with good and sufficient security, * * *."

The defects in the bond here appear to be irregularities which may be readily corrected by the district court when proper motions therefor are made. See, State ex rel. Leary v. District Court, 78 Minn. 464, 81 N. W. 323. (Bellows v. Ericson, 233 Minn. 320, 46 N. W. [2d] 654, is distinguishable in that no bond whatsoever was furnished therein, and preliminary to the application for the writ, a motion to vacate the district court order had been made and denied.) We do not feel that they are such as would entitle relators to invoke

the prohibitory powers of this court. See, 5 Dunnell, Dig. & Supp. § 7840. As stated there:

"* * * It [the writ] is not a writ of right, but issues in the discretion of the court and only in extreme cases, where the law affords no other adequate remedy by motion, trial, appeal, certiorari, or otherwise. It is to be used with great caution and forbearance, for the furtherance of justice, and for securing order and regularity in the subordinate tribunals of the state."

■ It is defendants' contention that, after service of the notice of cancellation pursuant to M. S. A. 559.21, the trial court was without further jurisdiction over the contract or the parties thereto— that the statutory remedy provided therein was intended to furnish an adequate and speedy method of terminating contracts without judicial interference. In support thereof, they cite Nolan v. Greeley, 150 Minn. 441, 443, 185 N. W. 647, 648, in which it was stated:

"* * * we see in this case *no equitable ground* upon which to rest an injunction assuming to vacate the service of the notice or to suspend its operation. If an action had been brought before the service of notice, an injunction, on a sufficient showing, might be granted, staying a cancellation. * * * Here the giving of the notice was a fact accomplished, and *from then on the statute was in operation shortening from day to day the time in which to remove the defaults.*" (Italics supplied.)

The facts here are readily distinguishable from those in the case cited. The substance of the court's ruling there was that the action was not a proper one to determine whether payment was made, and the court saw no equitable ground on which to rest an injunction assuming to vacate the service of the notice or to suspend its operation. There plaintiff claimed a defense to the cancellation. Here Craigmiles' claim is not based upon any claim that the contract was in default or that they had a defense thereto. They did not at any time seek to vacate the service of the notice. Thereunder they made a tender of the amount which defendants claimed was in default, as authorized by § 559.21, which provides that:

"If, within the time mentioned, the person served complies with such conditions and pays the costs of service, the contract shall be thereby reinstated; but otherwise shall terminate."

When defendants, by their conduct, nullified the statutory rights of Craigmiles under the cancellation statute, it was not improper for the district court to then invoke its equitable power. The situation is not unlike that in which the district court, in the exercise of its equitable powers, intervenes in the foreclosure of a mortgage by advertisement which overstates the amount of the mortgage indebtedness. See, Ekeberg v. Mackay, 114 Minn. 501, 131 N. W. 787, 35 L.R.A. (N.S.) 909. As stated in Follingstad v. Syverson, 160 Minn. 307, 311, 200 N. W. 90, 92:

"Under the rule of Nolan v. Greeley, supra, service of the notice of cancelation must be taken as a 'fact accomplished' and we cannot now vacate it or attempt to stay its effect except that, there being doubt as to the balance due defendant vendors because plaintiff vendee may reduce it by establishing damage, and for that reason the attempted cancelation may be a nullity, it is proper to enjoin any further proceedings under the notice of cancelation and all attempts to oust plaintiff from possession or to interfere with his use of the premises pending a determination of the action for fraud.

\*　\*.　\*　\*　\*

"However drastic the statutory procedure, it cannot be that the legislature intended equity to be entirely powerless and deprived of *all* its former beneficent jurisdiction in such matters. \* \* \* the legislature could not have intended to prevent the interference of equity to prevent irreparable injury to the vendee from a cancelation that possibly might prove, as the result of *pending* litigation, to have been unauthorized."

See, West v. Walker, 181 Minn. 169, 231 N. W. 826, 74 A. L. R. 165; Lilienthal v. Tordoff, 154 Minn. 225, 191 N. W. 823, 194 N. W. 722.

It is clear from the foregoing authorities that the district court was well within its equitable powers in restraining further actions of defendants under the cancellation notice.

■ As a prerequisite to the issuance of a writ of prohibition, the party seeking it must show that he will suffer an injury for which there is no adequate remedy at law. In re Estate of Davidson, 168 Minn. 147, 210 N. W. 40; State ex rel. Roberts v. Hense, 135 Minn. 99, 160 N. W. 198. There is no such showing here. If it should be determined that the deposit made with the clerk is inadequate or otherwise not in compliance with the requirements of the contract, then defendants have lost none of their rights insofar as cancellation is concerned. For the additional time that may elapse between the expiration date in the notice and final determination of the action, the court may further protect them by requiring bond in an increased amount. See, Follingstad v. Syverson, 160 Minn. 307, 200 N. W. 90. Likewise, if the deposit is sufficient to reinstate the contract in accordance with its terms, it cannot be said that defendants have been injured.

Further, we see no error in designating the clerk to act as a depository for the insurance policies and the funds claimed to be in default under the contract. Plaintiffs had an absolute right to make the payments and reinstate the contract. Had they failed to do so, their rights would have terminated after the expiration of the 30 days specified. To circumvent this, the trial court, in the exercise of its equitable powers, designated the clerk as "the depository of this court" to accept plaintiffs' tender and receipt therefor as a tender by plaintiffs to defendants. In Lilienthal v. Tordoff, *supra,* authority for such a procedure appears to be recognized. There we stated (154 Minn. 230, 191 N. W. 824):

"The proceeding under G. S. 1913, § 8081 [now M. S. A. 559.21], has been likened to a statutory foreclosure, * * *. The service of the notice starts running the time for removing the default. * * *. A mere garnishment does not interrupt its running. The defendant did nothing. Perhaps, had he feared loss through double payment, he might have had a remedy under G. S. 1913, § 7765, by paying the amount into court. He may have had some other remedy in equity."

For the reasons stated, the writ of prohibition is discharged.

Plaintiffs are allowed to tax their costs and disbursements against defendants.

So ordered.

