# MILTON D. CRAIGMILE AND ANOTHER v. ADOLF O. W. SORENSON AND ANOTHER.

80 N. W. (2d) 45.

November 30, 1956—No. 36,853.

*A. D. Bornemann* and *Harry H. Peterson,* for appellants.
*Lyman A. Brink* and *Philip E. Thorson,* for respondents.

KNUTSON, JUDGE.

This case arises out of an attempt by defendants as vendors to cancel a contract for deed to sell certain real estate to plaintiffs as vendees. It has been here on two prior occasions. Craigmile v. Sorenson, 239 Minn. 383, 58 N. W. (2d) 865, and Craigmile v. Sorenson, 241 Minn. 222, 62 N. W. (2d) 846. The facts stated in our prior decisions will not be repeated except insofar as it seems necessary to a determination of the issues now before us.

Briefly, the facts are that on April 16, 1951, defendants, husband and wife, as vendors, contracted to sell a tract of farmland in Kittson County, in this state, to plaintiffs as joint tenants. Thereafter a dispute arose as to the validity of the contract. On May 29, 1953, our opinion in the first case was filed upholding the validity of the contract (239 Minn. 383, 58 N. W. [2d] 865). On July 11, 1953, defendants served a notice of cancellation of the contract under M. S. A. 559.21 to 559.214, claiming a default in the following particulars: (1) Failure to make the downpayment and to pay installments on the principal and failure to pay the interest in compliance with the terms of the contract; (2) failure to keep the buildings on said premises at all times insured against loss by fire and against loss by windstorm in accordance with the terms of the contract; and (3) failure to pay, before penalty attached thereto, taxes due and

payable in the year 1952. On July 23, plaintiffs tendered to defendants the amount which they computed to be due, including principal and interest on the contract; taxes paid and interest thereon at six percent; and fire and windstorm insurance policies as set forth in our second opinion. Craigmile v. Sorenson, 241 Minn. 222, 62 N. W. (2d) 846. Defendants refused the tender without giving any specific reason therefor. On July 28, 1953, plaintiffs commenced an action for a declaratory judgment to determine the amounts due and the status of the parties with respect to the contract and what was required in order to comply therewith. In conjunction with this action they sought an injunction restraining defendants from proceeding with the cancellation of the contract until the amount due on the contract and other alleged defaults could be determined. Defendants applied for a writ of prohibition to restrain the trial court from enforcing such injunction. That matter was disposed of in our second opinion filed February 11, 1954 (241 Minn. 222, 62 N. W. [2d] 846). The case then came on for trial, and the parties stipulated that the case would be submitted to the trial court "upon all the files, records and proceedings herein, and upon the following facts which are stipulated as the evidence." The facts thereafter were stipulated. Findings of fact, conclusions of law, and order for judgment thereafter were made pursuant to this stipulation, and judgment was entered pursuant thereto declaring the contract to be in full force and effect. This appeal is from the judgment so entered.

It is the contention of defendants that (1) plaintiffs, as vendees, were in default under the contract for deed for the reason that they failed to name defendant Ruby C. Sorenson in the policies of insurance covering the buildings on the premises as a person entitled to receive the proceeds of the insurance in case of loss; (2) they are in default in failing to name Mary Joan Craigmile as joint owner of the property in such insurance policies; (3) the court lacked jurisdiction to adjudge that the insurance policies be amended to make them comply with the contract; and (4) the stipulation of facts is conclusive and that the court was bound thereby and could not go beyond the stipulation of facts.

■ The contract for deed contains the following provision, among others:

"Said parties of the second part further covenant and agree as follows: * * * at their own expense, to keep the buildings on said premises at all times insured in some reliable insurance company or companies, to be approved by the parties of the first part, against loss by fire for at least the sum of insurable value and against loss by windstorm for at least the sum of insurable value payable to said parties of the first part, their heirs or assigns, and, in case of loss, should there be any surplus over and above the amount then owing said parties of the first part, their heirs, or assigns, the balance shall be paid over to the said parties of the second part as their interest shall appear, and to deposit with the parties of the first part policies of said insurance."

In the execution of the contract for deed defendants are designated as husband and wife. The record fails to disclose who was the record owner or whether one of the vendors signed only as the spouse of the record owner. There is no indication, nor does the contract so state, that they were joint owners. Plaintiffs' attempt to comply with this contract with respect to the insurance requirement discloses a determined attempt on the part of defendants, as vendors, to do all that they could to prevent performance. As part of the tender made after service of the notice of cancellation of the contract, plaintiffs included fire insurance written by Hallock Farmers Mutual Fire Insurance Company and windstorm insurance written by Minnesota Farmers Mutual Insurance Company.[1] These were the same companies with which defendants had carried insurance on the buildings on this very farm prior to the execution of this contract and the same companies with which they carried insurance on their own property. In spite of this, they refused to approve the insurance policies without giving any specific reason therefor.

In a hearing before the trial court, defendants were directed to disclose what insurance company would be acceptable to them, as well as the amount which they claimed to be due on the contract, in

---

[1]See, Craigmile v. Sorenson, 241 Minn. 222, 224, 62 N. W. (2d) 846, 848.

order to afford plaintiffs an opportunity to comply with their demands. Adolf Sorenson wrote the court a letter on August 7, 1953, in which he stated the amount which he claimed to be due and also stated:

"* * * I want this farm covered by one of the following company.

"Boston Insurance Co.
Boston Massachusetts
c/o Viblen Insurance Agency,
Hallock, Minnesota.

"That company will be acceptable for both fire and tornado, the Ins. value is $14,000."

Ruby Sorenson, as of the same date, wrote the court stating the amount which she claimed to be due but said nothing at all about insurance.

Plaintiffs thereupon procured insurance from the company and agency named in Adolf Sorenson's letter. They then attempted in various ways to make a tender upon defendants of these policies and the money which was claimed to be due. On August 8, 1953, Milton D. Craigmile, his attorney, and two other individuals went to Sorenson's home and had with them cash money in the amount stated in the Sorenson letters and the insurance policies written by the Boston Insurance Company for the purpose of making a tender thereof. The Sorensons were not at home. Craigmile and the others were informed that they were in North Dakota and would not return until the following week. On the same day, plaintiffs obtained an ex parte order from the trial court authorizing them to deposit the money and insurance policies with the clerk of the district court if they were unable to make a tender on the Sorensons within the time limited by the notice of cancellation.[2] On August 10, after three visits to the Sorenson home, they deposited the money and insurance policies with the clerk of the district court pursuant to the court's order. Defendants and their attorney were notified promptly of such deposit by the clerk by mail. The statutory

[2] See, Craigmile v. Sorenson, 241 Minn. 222, 62 N. W. (2d) 846.

period for reinstatement of the contract for deed expired. Defendants at no time during that period, as far as appears from the record, stated the reason for their refusal to accept this tender. They now claim that there was a default for failure to include the name of Ruby Sorenson in the loss payable clause.

For the most part defendants rely upon Hebert v. Turgeon, 84 Minn. 34, 86 N. W. 757. That case is clearly distinguishable from the one now before us. There, a mortgage required the buildings to be insured with a loss payable clause to the mortgagees. No loss payable clause at all was included in the insurance. The court held that the mortgagor was entitled to compliance with the contract rather than a lawsuit. In this case, there was a loss payable clause under which the proceeds of the insurance in case of loss would have been paid to Adolf O. W. Sorenson as his interest appeared. The record fails to show whether Mrs. Sorenson had more than the interest of a wife in the property. Furthermore, she at no time complied with the court's direction to name the insurance company she would approve. Clearly, in case of a loss, the insurer would be put on notice that someone other than the vendees under the contract had an interest in the proceeds of the insurance. The worst that could happen would be that defendants would have to determine between themselves what their respective interests were. As far as the vendees in the contract are concerned, they could no more collect the entire amount of the insurance than they could if both defendants had been named in the loss payable clause. We are convinced that the alleged default was due to the unexplainable conduct of the vendors in failing to cooperate with the vendees in determining what the default was and in stating what insurance company they would be willing to approve within the time in which plaintiffs could remove the default under our statute.

Where, as here, the vendors refuse to approve the policies of insurance tendered by the vendees and thereafter fail or refuse to comply with a reasonable request that they state what insurance they will approve, they cannot claim a default for the purpose of effecting a cancellation of the contract until they have given the

vendees a reasonable opportunity to comply with the contract.

Where the vendors in a contract for deed reserve the right to approve insurance placed on buildings on the premises, they must exercise the right to approve in good faith in such a manner as to permit the vendees to comply with the contract. Where they act in such a manner as to prevent performance, they cannot claim a default until they have afforded the vendees a reasonable opportunity to perform. In 3 Williston, Contracts (Rev. ed.) § 677, we find the following statement:

"It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure."

■ Defendants next contend that there has been a default because the insurance policy was issued to Milton D. Craigmile as owner alone rather than to Milton and his wife, Mary Joan Craigmile, as joint tenants. To be tenable, this contention must be based on the premise that, in the event of a loss, the insurer would be absolved of liability. Reliance is placed on the cases of Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L.R.A.(N.S.) 231, 7 Ann. Cas. 1144; Kobzina v. Empire State Ins. Co. 289 Ill. App. 157, 6 N. E. (2d) 895; Aetna Ins. Co. v. Resh, 40 Mich. 241; Milliken v. Woodward, 64 N. J. L. 444, 45 A. 796; and Schroedel v. Humboldt Fire Ins. Co. 158 Pa. 459, 27 A. 1077. All of these cases, as far as we can determine from the opinions, involved insurance policies containing provisions similar to those in Parsons, Rich & Co. v. Lane, *supra*. In that case the policy contained a provision that (97 Minn. 100, 106 N. W. 486, 4 L.R.A.[N.S.] 233, 7 Ann. Cas. 1145):

"* * * This entire policy * * * shall be void * * * if the interest of the insured be other than unconditional and sole ownership or if the subject of insurance be a building on ground not owned by the insured in fee simple."

In holding that a violation of this provision would void the policy, we relied upon our earlier decision in Collins v. St. Paul F. & M. Ins. Co. 44 Minn. 440, 46 N. W. 906. The policy in that case contained a provision similar to that in the Parsons, Rich & Co. case. We there said (44 Minn. 441, 46 N. W. 907):

"* * * The policy expressly excluded from its operation any interest other than the absolute and sole ownership."

The policy involved in the case now before us contains no such provision. Instead, it provides:

"The policy shall be void if any material fact or circumstance stated in writing has not been fairly represented by the insured * * *."

This language is taken from our standard fire insurance policy set forth in M. S. A. 65.01, which contains the permissible form of fire insurance policies and the provision limiting liability which they may contain. The above provision must be read with § 60.85, which reads as follows:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

This statute has been frequently construed. In Johnson v. National Life Ins. Co. 123 Minn. 453, 456, 144 N. W. 218, 219, Ann. Cas. 1915A, 458, 459, we said:

"Our statutes, and statutes like them, were intended to put warranties upon substantially the basis of representations and to do away with defenses made by incorporating conditions and terms in policies, making them by agreement material representations or warranties, and controlling on the right of recovery. As we construe the statute a material misrepresentation, made with intent to deceive and defraud, avoids the policy. A material misrepresentation, not made with intent to deceive or defraud, does not avoid the

policy, unless by the misrepresentation the risk of loss is increased. If a material misrepresentation increases the risk of loss the policy is avoided, regardless of the intent with which it was made. An immaterial representation, though made with intent to deceive and defraud, does not avoid the policy."

That construction has since been frequently followed.[3]

In McLevis v. St. Paul F. & M. Ins. Co. 165 Minn. 468, 206 N. W. 940, we had under consideration a policy provision similar to the one contained in the policy now before us and the statutory provision quoted above (then G. S. 1923, § 3370). In that case, plaintiff represented that he was the owner of the property in procuring fire insurance. As a matter of fact, he had only a life estate. We distinguished cases such as Collins v. St. Paul F. & M. Ins. Co. 44 Minn. 440, 46 N. W. 906, and the distinction would apply as well to Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L.R.A. (N.S.) 231, 7 Ann. Cas. 1144. We said in the McLevis case (165 Minn. 471, 206 N. W. 942):

"The policy provided that it should be void 'if any material fact or circumstances stated in writing has not been fairly represented by the insured.' That provision is controlled by the statute already discussed. The policy did not contain any provision avoiding it 'if the interest of the insured in the property is not one of absolute and sole ownership.' So cases involving policy clauses of that kind are clearly distinguishable, e. g. Collins v. St. P. F. & M. Ins. Co. 44 Minn. 440, 46 N. W. 906. They have to do with absolute conditions of liability, the failure of which is fatal to the insurance. There was no such condition here. There was only a misrepresentation, the effect of which on the policy is controlled by the statute."

That decision is controlling here. Consequently, the questions for our determination are: (1) Were any oral or written misrepresentations by the assured, or in his behalf, in the negotiation of the insurance, made with intent to deceive or defraud the insurer?

[3]See, First Nat. Bank v. National Liberty Ins. Co. 156 Minn. 1, 194 N. W. 6, 38 A. L. R. 380; 9 Dunnell, Dig. (3 ed.) § 4665.

(2) If not, did any such misrepresentations increase the risk of loss?

The burden of proving that a misrepresenation was made with intent to deceive or defraud the insurer rests on the one who asserts it.[4] It is a question of fact to be determined by the jury, or the trial is without a jury, unless the evidence is conclusive one way or the other.[5] The same is true as to whether the misrepresentation, if made with no intent to deceive or defraud, increased the risk of loss.[6]

Here there was no written application. Certainly there was no misrepresentation in writing. The record is silent as to who gave the agent for the insurer the information on which it was written. The insurance company and the agent were selected by defendant Adolf Sorenson. The trial court was of the opinion that "the conclusion is at least as logical that the defendants called at the insurance agency and gave the necessary information" as that plaintiffs gave it to him. On the basis of the record before us, we are inclined to agree. At least there is absolutely no evidence of any misrepresentation, oral or written, made by the assured, or in their behalf, in the negotiation of the insurance that could by any stretch of the imagination be said to have been made with intent to deceive or defraud anyone. As soon as the court directed them to do so, plaintiffs promptly procured a rider including the names of both coowners.

We then come to the question: Has the failure to include the name of Mary Joan Craigmile as one of the insured increased the risk of loss? The court made no specific finding on this issue but did state in a memorandum, expressly made part of its findings, that "The failure to include the name of the plaintiff, Mary Joan Craigmile, as an owner, did not increase the risk of loss."

No motion for amended findings or findings contrary to the above has been made. Here, again, the burden rested on defendants to

---

[4]See, Nielsen v. Mutual Service Cas. Ins. Co. 243 Minn. 246, 67 N. W. (2d) 457.

[5]See, Nielsen v. Mutual Service Cas. Ins. Co. *supra.*

[6]See, Nielsen v. Mutual Service Cas. Ins. Co. *supra.*

prove that which they assert. The record is barren of any evidence to establish the fact that the risk of loss was increased on account of the omission of the name of Mary Joan Craigmile. It is difficult to see how it could be so under the facts of this case. It follows that the court's determination on both issues is amply sustained by the record. Having failed to establish the invalidity of the policy tendered, defendants are in no position to claim a default on that ground.

■ Defendants then contend that the court lacked jurisdiction to adjudge that the vendees be permitted to amend the policy by including the omitted names of Ruby C. Sorenson and Mary Joan Craigmile. This contention is based on the premise that cancellation of a contract for deed is a proceeding in pais and that the court has no power to interfere with it. We have already discussed the equitable powers of the court in connection with this proceeding in our former opinion. Craigmile v. Sorenson, 241 Minn. 222, 62 N. W. (2d) 846. This action is one for a declaratory judgment to determine the rights and status of the parties under this contract. As a part of its determination that there was no default which would justify a cancellation of the contract as far as failure to furnish insurance according to the contract was concerned, the court could permit the vendees to meet the objections of the vendors once it became known that omission of such names constituted the alleged default. Failure to do so sooner was the result of defendants' failure or refusal to assert such omission as a default. Defendants could have had compliance simply by asserting these objections to the insurance at an earlier date.

The situation in Johnson v. Northern Minnesota Land & Investment Co. 168 Iowa 340, 150 N. W. 596, was quite analogous to the one involved here. That was a suit to foreclose on a mortgage for alleged breach of conditions which would accelerate the maturity of the mortgage debt. In support of its claim that the mortgage conditions had been breached, the mortgagee urged that the condition requiring the mortgagor to keep the premises insured was broken by procuring insurance which misstated the amount of the encum-

brance on the land. To this the court said (168 Iowa 348, 150 N. W. 599) :

"* * * Without passing upon the ultimate validity of the policy, it is enough to say that the record discloses a good-faith attempt upon the part of Fry as the purchaser of the mortgaged premises to comply with the requirements of the mortgage in the matter of insurance and that none of the objections which are now urged as a ground for declaring the mortgage due were made at any time before the commencement of suit. It is only elementary justice to hold that when a mortgagor actually procures insurance in some form in a good-faith attempt to comply with the requirements of the mortgage, a mortgagee cannot arbitrarily declare a default without giving to the mortgagor notice of his objection and a reasonable opportunity to meet it. Such was the holding in Provident Sav. L. Assur. Soc. v. Georgia Ind. Co., 52 S. E. 289 (Ga.).

\* \* \* \* \*

"We hold, therefore, that inasmuch as Fry procured his insurance in good faith, he was entitled to some notice of the mortgagee's objection thereto and a reasonable opportunity to meet such objections before the mortgagee could declare the mortgage due for such alleged default."[7]

In this case it is apparent that failure on the part of Ruby Sorenson to state what insurance company she would be satisfied with and failure to state at any time the objection to the insurance which was furnished is the basis for defendants' belated claim of a default. If defendants had acted in good faith and had made known their objection to the policy, the omission, without any question, would have been corrected prior to the expiration of the time for canceling this contract. Failure of defendants to do so obviously was an attempt to create a default by preventing a performance of the contract rather than cooperating with plaintiffs in an attempt to seek its performance. To permit defendants to take advantage of such action on their own part would permit a party to take advantage of his own wrongful conduct. We see no reason why the court could

---

[7]See, also, Fraser v. Kay (Tex. Civ. App.) 251 S. W. (2d) 754.

not permit plaintiffs to comply with the contract as part of its declaration of the rights of the parties when it was finally determined what the objection to the insurance was.

■ Defendants next contend that the court lacked jurisdiction to grant the relief for correction of the defects in the insurance for the reason that no such relief was demanded in the pleadings. In their prayer for relief, in addition to asking that the rights of the parties be determined, plaintiffs asked for such other and further relief as the plaintiffs might be entitled to in the premises. The court could determine all the rights of the parties under this prayer for relief.

■ The final contention of defendants is that the court could not make its finding No. 2, which in effect finds that the vendors did not disclose their objection to the policy at the time they rejected the tender thereof, for the reason that there was no stipulation to that effect in the stipulation of facts. The stipulation for an order settling the case, signed by the attorneys for all the parties, shows that the parties theretofore had stipulated that the "case 'may be submitted' for decision * * * up on the files, records and proceedings herein and upon the facts therein stipulated at pages 2 to 17 thereof, inclusive. The said facts were stipulated to be the evidence in the case." Under this stipulation, the court was not bound by the stipulation of facts alone. There is ample support in the record for the finding mentioned, and, as a matter of fact, it is implicit in the stipulation of facts as well. We see no merit to this contention.

Affirmed.