**1985 ROBERT STREET ASSOCIATES, Respondent,**

v.

**MENARD, INC., Appellant.**

No. CX–86–1637.

Court of Appeals of Minnesota.

April 14, 1987.

Steven K. Champlin, Dorsey & Whitney, Minneapolis, for respondent.

James A. Beitz, Valerie K. Werness, Hagerty & Candell, P.A., Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal questions whether the trial court abused its discretion in ordering the lessee to forfeit its leasehold in addition to

awarding damages for breach of the lease covenant for repairs.

## FACTS

Respondent, 1985 Robert Street Associates, is the owner and lessor of commercial property rented by appellant Menard, Inc. Respondent purchased the property in May 1985, subject to the tenancy rights of Menard.

Menard first rented the property in 1974. Under the 1974 lease the tenant was responsible for day-to-day maintenance; the landlord was responsible for major repairs. In 1978, the lease was renegotiated as a result of a dispute between Menard and the lessor concerning the deteriorating condition of the premises, particularly the roof and parking lot. The lessor and lessee disagreed as to whether the deteriorating conditions were within the "repair" obligation of the lessor or the "maintenance" obligation of the lessee.

The 1978 lease established Menard's sole responsibility for all maintenance and repair of the property. According to the testimony of Menard's own vice president, the renegotiated lease provided that Menard was to pay "lower rent to compensate for higher than normal repairs," including the necessary repairs for the roof and the parking lot. The lease set forth in five separate provisions the specific nature of the repair covenant. The primary clause states:

> Throughout the term of this lease, Tenant, at its sole cost and expense, shall take good care of the Property * * * and all appurtenances of the Property, and shall at all times keep the same in order and condition substantially as similar shopping center complexes of comparable size and rent structure are then maintained, ordinary wear excepted, and make all necessary repairs thereto, interior and exterior, structural and nonstructural, ordinary and extraordinary and foreseen and unforeseen.

Another provision provides the tenant assumes the "full and sole responsibility" for "all repairs, maintenance and replacements" to the property. The lease established the tenant would be liable for its default on any lease covenant, and further, the lease would terminate if the tenant's default were not cured within thirty days of notice of the default. The lease established a potential 26 year term.

Respondent purchased the property and the lessor's interest on May 20, 1985. On August 29, 1985, respondent sent notice to Menard, advising that Menard was in default of the covenants to keep the premises in good condition and repair, and demanding curative action as permitted by the 1978 lease.

On October 1, 1985, respondent notified Menard its tenancy was terminated under the terms of the lease. In November 1985, respondent sued Menard for damages and for an order compelling Menard to vacate the property. The trial court determined Menard's failure to keep the premises in good repair constituted a default of the 1978 lease agreement. The court awarded judgment for damages in the amount of $119,860, judgment for attorney fees in the amount of $50,000, and an order terminating the lease and requiring Menard to vacate the premises.

## ISSUE

Did the trial court err in awarding forfeiture of the leasehold in addition to a money judgment?

## ANALYSIS

■ Menard disputes the trial court's enforcement of the 1978 lease provision providing for forfeiture. The terms of the parties' lease clearly establish the landlord's right to terminate the lease upon default on the lease covenants. Where a contract clearly and expressly provides for forfeiture, the provision will be strictly construed. *Naftalin v. John Wood Co.*, 263 Minn. 135, 147–48, 116 N.W.2d 91, 100 (1962). *See also Cady v. Bush*, 283 Minn. 105, 110, 166 N.W.2d 358, 362 (1969) (courts should not interfere with the contract rights of parties as evidenced by their writing).

Appellant claims that, under the circumstances of this case, the trial court should have provided relief from the forfeiture provision of the lease because forfeiture imposes an unreasonably disproportionate hardship. The award of an equitable remedy is within the sound discretion of the trial court. *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 524 (Minn. 1979). We will reverse the trial court only upon a showing of a clear abuse of that discretion. *Id.*

Appellant bases its claim on the equitable principle that forfeitures "are not favored and will not be enforced when great injustice is done thereby and the one seeking a forfeiture is adequately protected without" the remedy. *Warren v. Driscoll*, 186 Minn. 1, 5, 242 N.W. 346, 347–48 (1932) (upholding lease provision that required tenant to forfeit the leased property and pay rent for the full term of the lease, but allowing the tenant to recover the proceeds from the sale of crops he grew on the leased land while he was in possession); *Hideaway, Inc. v. Gambit Investments, Inc.*, 386 N.W.2d 822, 823 (Minn.Ct.App. 1986) (supreme court affirmed trial court's award of $500 in damages to buyer but refused to enforce forfeiture clause of contract for deed against seller, because awarding title to buyer such that seller forfeited all future payments on the contract was a harsh remedy for seller's trespass).

Appellant claims forfeiture works a severe hardship because it will lose a lease worth $1.7 million. An examination of the record as a whole does not support appellant's valuation of the lease. The tenant's comprehensive repair obligation combined with the tenant's knowledge that the building was poorly designed, cheaply constructed, and in need of extensive repairs to the roof, parking lot, and walls at the time the lease was entered negate appellant's claim as to the value of the lease.

Appellant argues the forfeiture remedy is also disproportionate because the money judgment leaves the landlord whole. This argument conflicts with a trial court finding and respondent's evidence on damages much greater than those awarded. The court found that $119,860 was "the minimum required by the good condition and repair clause." There is nothing to indicate the court believed the amount of repairs would be the same as would be required if the landlord had to anticipate Menard's long term continued tenancy. Respondent's evidence showed costs of over $450,000 for necessary repairs.

Other cases relied upon by appellant hold that courts will provide relief from forfeiture where the failure to fulfill a condition is the result of excusable and inconsequential delay. *See, e.g., Trollen v. City of Wabasha*, 287 N.W.2d 645 (Minn.1979). In *Trollen*, the lessee failed to comply with the lease provision regarding notice of intent to renew the lease. The supreme court refused to uphold forfeiture because the delay in notice was slight, the parties had established an informal course of dealing, the lessor was not prejudiced by the delay, and the lessee would suffer such hardship as to make the lease provision unconscionable. *Id.* at 647–48 (adopting rule from *F.B. Fountain Co. v. Stein*, 97 Conn. 619, 624, 118 A. 47, 49 (1922)).

Appellant's conduct during the events preceding this appeal does not fit within the excusable and inconsequential delay standard established in *Trollen*. The evidence indicated Menard materially breached the repair covenant over a long period of time. Menard did not perform the repair work contemplated in 1978. In April 1985, prior to respondent's purchase of the property, the landlord sued Menard alleging breach of the repair covenant. Respondent purchased the property in May 1985. In August 1985, respondent wrote to appellant: "Menard's lack of compliance with its good order, condition, and repair obligation have led to serious conditions on the premises in four major areas," deterioration of the air conditioning and cooling rooftop plants, roof, exterior walls, and the parking lot. Menard still had not begun any repairs when respondent terminated the lease for breach of the covenant to repair in October 1985.

On appeal, Menard asserts excusable delay as a basis for equitable relief. Yet prior to this appeal Menard simply denied the need for repair and provided no assurance to the landlord that the necessary repairs would be commenced. Menard's reply to respondent's August 1985 letter denied the need for repairs: "Menard has maintained the premises during the term of the lease according to [the] lease provisions." Menard unequivocally denied the need for repairs in its answer to the complaint filed by respondent in the trial court. At trial, Menard claimed its duty to repair was only a duty to maintain the premises in the same condition that existed at the time it entered into the 1978 lease.

The trial court found the premises and adjacent common areas were not in good order, condition and repair as required by the 1978 lease, and that the lack of repairs was substantial. We conclude these findings are not erroneous in light of the low rent-high repair provisions in the 1978 lease, the negotiations leading to the drafting of that lease, and the extensive testimony at trial concerning the need for repair. *See* Minn.R.Civ.P. 52.01 (trial court findings of fact shall not be set aside unless clearly erroneous).

Menard's actions preclude judicial approval of their claim for equitable relief. Its denial of the need for repairs, coupled with its failure to proceed with due diligence in beginning repair of patent, serious and deteriorating conditions on the property conflict seriously with the expectation for equitable relief.

Menard claims it did not begin any repairs because it was not economically feasible to proceed with expensive repairs while under the cloud of litigation that could force it to eventually relinquish the property. Specifically, Menard points to respondent's assertions, at the inception of this dispute, that Menard was required to vacate the premises for two reasons: first, because Menard was in default of the repair covenant, and second, because Menard was a month-to-month tenant because the 1978 lease terminated along with expiration of a prior lease (a contention disapproved by the trial court).

> "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance * * * of an obligation due him * * *, he cannot take advantage of the failure."

*Craigmile v. Sorenson,* 248 Minn. 286, 292, 80 N.W.2d 45, 49 (1956) (quoting 3 Williston, *Contracts* (Rev. ed.) § 677).

The trial court rejected this argument, concluding that appellant's failure to make repairs was without excuse. The record supports the conclusion that respondent's actions were not the cause of appellant's failure to perform. If Menard was determined to avoid expenditures while protesting the equity of the landlord's demands, the tenant had remedies it did not pursue. It could have invested in repairs and claimed damages. It could have turned immediately to the court to seek a declaratory judgment and equitable relief. In fact, many of the Minnesota cases cited by appellant as support for its equitable argument were declaratory judgment actions. *See e.g., Trollen,* 287 N.W.2d at 645; *Craigmile,* 248 Minn. at 287, 80 N.W.2d at 45; *Myhre v. Severson,* 211 Minn. 189, 300 N.W. 605 (1941). Finally, in seeking equitable relief, Menard could have shown good faith by offering the deposit of repair funds in escrow.

Menard's claim that respondent acted in bad faith in terminating the lease is also not supported by the record. The lease requires the lessor to cure or proceed with due diligence to cure any default within thirty days of notice of default. Respondent's action in enforcing its rights under the lease does not constitute bad faith, notwithstanding the fact that prior to notice of default, Menard and respondent were negotiating the use and development of the leased premises and surrounding property.

The landlord here had a substantial and legitimate interest in obtaining the lessee's prompt performance of the repair covenants and in terminating the lease if the repair covenants were not honored. The lease was valuable to the landlord if the

tenant lived up to its repair obligation, but without this performance it was unacceptably burdensome. The record establishes that the building was subject to accelerated depreciation due to the continued disrepair. Respondent's ability to attract tenants for vacant space on the same land was impaired and the rental value of that vacant space was diminished. Furthermore, the poor condition of the Menard building and lot and the inability to fill vacant space threatened respondent's ability to obtain refinancing when its loan became due in May 1986. Finally, respondent was liable for injuries that may have occurred due to the condition of the property.

### DECISION

Appellant failed to demonstrate grounds for equitable relief and therefore the trial court's award of damages in addition to forfeiture of the leased premises was not an abuse of discretion.

Affirmed.