Mary Kobzina et al., Administratrix of the Estate of Charles Kobzina, Deceased, Appellees, v. Empire State Insurance Company, Appellant.

158

Opinion filed March 4, 1937.

H. GRADY VIEN, of East St. Louis, for appellant.

T. A. O'CONNOR, of East St. Louis, for appellees.

MR. JUSTICE EDWARDS delivered the opinion of the court.

On April 7, 1932, Charles Kobzina and Mary Kobzina, his wife, became, by deed, the owners, as joint tenants, of a business building and lot in East St. Louis, and so remained until December 1, 1935, when Charles Kobzina died. At the time of acquiring title said grantees executed a mortgage upon the property to Katherine Temme, trustee, in the sum of $1,500, both signing the instrument, and took out a policy of fire insurance thereon in the sum of $1,500, payable to both Charles Kobzina and Mary Kobzina; which policy, however, is not involved in this suit.

On December 15, 1933, another mortgage, in the sum of $1,000, was placed on the property, executed by

Charles Kobzina alone, to Benjamin Newman, trustee, and on the same day he took out another fire insurance policy in the company of defendant, in the amount of $1,000, payable solely to himself; also, on December 28, 1933, the same company issued to the said Charles Kobzina, alone, its further policy of fire insurance in the sum of $1,000.

On January 14, 1934, the building so insured was totally destroyed by fire. Defendant refused payment on the ground, among others, that there had been a misrepresentation of ownership of the property, which avoided the last two policies according to one of the clauses of such contracts.

Charles Kobzina, after the fire, filed on two occasions proofs of loss upon each of the policies, or four documents in all, in every one of which he stated under oath that he was the owner of the premises, and that no other person had any interest therein except the trustees in the two mortgages referred to, and completely ignored the fact that his wife, as a joint tenant, had an interest equal to his own.

Charles Kobzina and Mary Kobzina brought suit, alleging that when the insurance was applied for, information was given to the agent of defendant that both Kobzina and his wife owned the property as joint tenants, and asking a reformation of the policies and a decree directing defendant to pay thereon.

Pending the suit Charles Kobzina died, and his wife having been appointed administratrix of his estate, on her petition was substituted as a plaintiff in place of her husband, in her capacity as such administratrix. The cause was referred to a master who reported in favor of plaintiff; the court approved the report and entered a decree granting plaintiff the relief sought, and this appeal is based upon such decree.

Plaintiff, to maintain her contention, claims that the applications were taken by one John Skarha, who was

a subagent of Vernon & Company, the regular agents of defendant, and that Skarha handed to J. P. Drury, a member of such agency, on December 15, 1933, a written memorandum containing the address of the property, the amount of the policy desired, and the names of Charles Kobzina and Mary Kobzina as the owners of the property. Further, that Drury wrote the policy, which was handed to Skarha, and that the latter, without reading or looking at it, delivered same to Charles Kobzina and collected from him the premium, which Drury then divided with Skarha.

Defendant denies that Skarha was its subagent, or that he delivered to Drury the memorandum referred to; and as these are the controlling questions in the case it is necessary to consider the evidence bearing thereon.

Skarha testified that he had been soliciting insurance for defendant; that when policies were written as a result of his efforts, the commissions were divided with him by Drury, and that same was done in this case.

C. H. Vernon, the head of the agency, stated that it had no subagents and that Skarha, to his knowledge, had no authority, either directly or indirectly, to solicit insurance for defendant. J. P. Drury testified that Skarha was not an agent for defendant, nor did the witness ever employ him as such; that Skarha brought him all of the premiums for these policies, and that he did not think he paid the latter any commission on the policies. Drury's wife, Bernice, who was employed at the time in his office, and who alone wrote the policy dated December 28, 1933, stated that the agency had no subagents, and that no commissions were paid to Skarha.

Much is made of the fact that Drury said he did not think he paid Skarha a part of the commission as collected. Whether he did or not, is not decisive of the matter. The mere fact that the agent of defendant

may have divided his commission with another for procuring the application, does not alone and of itself prove the subagency of the latter. *United Firemen's Ins. Co. v. Thomas,* 92 Fed. 127.

It further appears that Skarha had been for sometime the general representative of Charles Kobzina in his transactions relative to the property; that he proposed the taking out of the additional insurance; made the deal whereby the Kobzinas acquired the property, and engineered the placing of the mortgages thereon.

Plaintiff had the burden of proving the subagency of Skarha, and upon the record we do not think such burden has been sustained. On the contrary we are of opinion that the testimony shows that Skarha, in the procuring of the policies of insurance in question, was the agent of Charles Kobzina and not of the defendant.

This brings us to a consideration of whether the proof establishes that Skarha, on December 15, 1933, delivered to Drury the memorandum referred to, and upon which proposition the burden of proving same rests upon plaintiff. Both Drury and his wife positively deny that Skarha delivered any such memorandum to them, but state that what he did bring in was the mortgage dated December 15, 1933, which was executed by Charles Kobzina alone, and in which no reference was made to his wife as having any interest in the property, and that he did not in any way refer to Mrs. Kobzina as a part owner of the premises.

Skarha states with equal positiveness that he delivered the memorandum in question. He admits however that Drury called for the description of the property, and claims that he furnished another memorandum as to same. He also admits that he drew the mortgage of the same date, signed and acknowledged as of that day, and in which he omitted the name of Mary Kobzina as a mortgagor, although, as he further admits, he was aware at that time that she was a

joint owner of the premises. When pressed for an explanation as to why he failed to insert her name in the mortgage, he was unable to assign a valid reason therefor.

To corroborate his testimony he called as witnesses the attorney for plaintiff, who testified without withdrawing from the case,—a practice often criticised by the Supreme Court (*Wright v. Buchanan,* 287 Ill. 468; *Judy v. Judy,* 261 Ill. 470), and the attorney's stenographer; both of whom stated that Skarha came into the attorney's office, showed the memorandum in question, and said he was going to deliver it to Drury, and that he then started for the latter's office. Skarha also testified to the same facts.

As between the testimony of Harriet Morris, the stenographer, and Skarha, there are some discrepancies; among others, as to what was written upon the memorandum, and noticeably as to when and where the memorandum was prepared. Mrs. Morris stated that Skarha came into the office, walked to the waste paper basket, took from it an old envelope, and then upon her desk wrote upon the paper which he then exhibited to her and the attorney; while Skarha testified, in response to a question during his examination by plaintiff's attorney, " I went to your office, had the ticket in my hand, and told the girl where I was going. I spoke to the girl about going to Drury's, and I went to Drury's with the memorandum." Skarha did not state that he wrote the memorandum in the attorney's office, and the plain purport of his testimony is that he had it in his hand when he entered the office; in other words, that he had previously prepared it; yet the stenographer says that he wrote it in her presence after entering the office. It is difficult to understand what motive would prompt Skarha to exhibit the memorandum to the attorney and his stenographer, a matter in which neither was interested and with which they were not concerned.

Skarha testified that he was a real estate and insurance broker. As such it would be expected that a business matter which he was negotiating would be held secret and not proclaimed from the housetops or hillsides. It seems improbable that he would have, for no apparent reason, exhibited it to those who were in nowise interested, and it seems equally unlikely that the others would, with nothing to impress its contents upon their memory, be able a year and a half later to testify in detail as to what was written thereon. We are not impressed with this testimony and do not think plaintiff has, by the greater weight of the evidence, proven that the memorandum was delivered to Drury.

It thus appears that whatever representation as to ownership was made to Drury or his wife, was that Charles Kobzina was the sole owner of the premises.

The title being in the husband and wife jointly, the husband could not insure as the sole owner. 26 Corpus Juris, 180, sec. 219;. Joyce on Insurance, 2nd Ed., Vol. 2, p. 2135, par 1049-B. There was an untrue representation as to ownership, which, by the terms of the policy, rendered it void from its inception. Such provisions are valid and a breach thereof will preclude recovery on the policy unless there was a waiver or estoppel which precludes the insurance company from setting up the provision as a defense. *Pollock v. Connecticut Fire Ins. Co.,* 362 Ill. 313; *Capps v. National Union Fire Ins. Co.,* 318 Ill. 350; *Hebner v. Palatine Ins Co.,* 157 Ill. 144.

Upon a consideration of the record we do not find any such conduct on the part of defendant as would amount to an estoppel or waiver of the clause referred to. The decree is reversed and the cause is remanded, with directions to dismiss the complaint for want of equity.

*Reversed and remanded with directions.*