Samuel Sistler, Appellee, v. Illinois Bankers Life Assurance Company, Appellant.

Term No. 50M5.

Heard in this court at the May term, 1950. ▇▇▇▇ Opinion filed September 20, 1950. Rehearing denied October 24, 1950. Released for publication October 26, 1950.

COMBE & TWENTE, of Harrisburg, and LOREN E. MURPHY, of Monmouth, for appellant; LOREN E. MURPHY, of Monmouth, of counsel.

DURFEE & MITCHELL, of Golconda, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal by Illinois Bankers Life Assurance Company, a corporation, defendant appellant (hereinafter called defendant), from a decree of the circuit court of Pope county, which ordered defendant to reinstate two policies of insurance on the life of Samuel Sistler, plaintiff appellee (hereinafter called plaintiff). The sole question presented on this appeal is whether or not the policies sued upon were properly lapsed and forfeited when the check which was given in payment of the July 1948, quarterly premiums due thereon, was dishonored upon due presentment, for insufficient funds. Dishonor came after the grace period had expired.

The facts in this case are practically uncontroverted as the matter was heard and determined upon a stipulation of facts that had incorporated therein testimony

by the plaintiff appellee. It appears that defendant had issued two policies of insurance on the life of the plaintiff, and that said policies are identical in form and were issued on what is known as the "assessment plan." It further appears that the policies have no loan or cash surrender value, and are nonparticipating, and that they afforded what is usually referred to as "successive term insurance."

The complaint filed in this case set forth each of the policies in *haec verba,* and the following parts of policy number 87502 presents the language to be construed on this appeal:

"All premiums are due and payable at the Home Office of the Company or at a depository bank designated by the Association. Any unpaid balances of the current policy year premium shall be deducted from the amount payable under this policy in the event of the death of the insured.

"The Association shall give notice of any premium due by depositing the same in the Post Office at Monmouth, Illinois, addressed to the last known Post Office address of the policy holder as shown by the records of the Association. Affidavit of mailing of said notice by the one in charge thereof shall constitute and be deemed and held to be conclusive proof of notice to the insured of said premiums being due.

"The premiums due under this Policy, to-wit: The sum of Twenty-one & 89/100 Dollars per annum, shall be due and payable annually, but at the option of the insured may be made in semi-annual or quarterly installments, and failure to pay same at maturity shall render the Policy absolutely null and void and the same shall be forfeited without further notice or action of the Directors of this Association unless reinstated as provided herein. Payments shall be due January first, April first, July first and October first; if paid quarterly or semi-annually, fractions of cents to be added.

"The payments herein above mentioned are protected by the entire assets of the Association, consisting of Mortuary, Surplus and Guarantee Reserve Funds and while the liability of the insured is not limited to fixed premiums the assets are unconditionally pledged to sustain the annual cost stated in this policy.

"On all renewal payments thirty days will be allowed during which premiums may be paid and during which time this policy shall remain in force.

"If this policy shall lapse by the non-payment of any premiums when the same shall become due it may be reinstated by the holder furnishing satisfactory evidence of insurability to the Association and the payment of all premiums then due. The Association reserving the right to require Medical Examination to be paid for by the lapsed policy holder and the examiner to be named by the Association."

On July 30, 1948, the last day of grace, plaintiff gave the check of his neighbor, Charles Grisham, for $11.18 for the quarterly instalment of premiums due on both policies on July 1, 1948. This check was dishonored upon presentment for payment in the due course of business and the policies were declared to be lapsed, null and void by the company. The check was returned to plaintiff on August 14, 1948, promptly after it was returned by the drawee bank.

Plaintiff contends that the failure to make payment of the said instalment of premiums was the fault of Grisham, and further claims that lapse of his policies was inequitable and unconscionable. Plaintiff advanced the further contentions that there was nothing in the policies which justified declaring the policies lapsed for nonpayment of the premiums; and that defendant should have given notice of dishonor of the check before declaring the policies lapsed; and that by reason of the company's manner of receiving payments and ac-

cepting indorsement of personal checks of Grisham, it was estopped from declaring the policies lapsed; and, finally, that risk of dishonor of Grisham's personal check fell with equal weight on both parties, and that defendant had thereby waived the right to forfeit the policies without first notifying plaintiff of the dishonor of the check. Defendant filed an answer to plaintiff's contentions, and there was also filed, a replication.

It appears from the evidence that plaintiff had elected to pay and had paid his premiums in quarterly instalments and there had been no previous defaults in said payments. Under date of June 15, 1948, defendant duly mailed plaintiff notices that the quarterly premiums were due on July 1, 1948, and these notices were on the form which had been used for many years by defendant, and read in part, as follows:

"Pay at Once ———— Avoid Lapse

"Unless the premium be paid on or before the day it falls due or within 30 days thereafter, the Policy and all payments thereon will become forfeited; unless there be Savings Deposits to the credit of said Policy, in which event the same shall be used as therein provided.

"Remittance by check, bank draft, or money order will be considered payment of any amount due, provided such check, draft, or money order is actually paid to the company on presentment for payment, in due course of business; and the issuance of a receipt for such check, draft, or money order shall not constitute a waiver of this provision."

Plaintiff at no time had any savings deposits to the credit of the policies. The evidence showed plaintiff had paid his premiums in first one way and then another, and that sometimes he paid by post office money order, and sometimes he would send the check of someone he knew. On July 30, 1948, he sent a check for $11.18 drawn by Charles Grisham on Grisham's ac-

516

count with the National State Bank of Metropolis, Illinois. This check was payable to the order of plaintiff and was by him indorsed in blank. It was in the correct amount for the total quarterly premiums on both policies. On a former occasion plaintiff testified he had sent Grisham's check in payment of the premiums, and on that occasion the check had cleared. The check mailed by plaintiff in payment of the premiums was received at defendant's home office in Monmouth, Illinois, on August 2, 1948, three days after the grace period had expired, and was deposited in defendant's account. In the due course of business the check was presented for payment and dishonored by the drawee bank on August 5, 1948, because Grisham had insufficient funds in his account to pay the check. It was stipulated on the trial in this cause that the check was accepted by the defendant upon the condition that the check actually be paid upon presentment for payment within a reasonable time. Upon receipt of the check on August 2, 1948, the defendant mailed to plaintiff receipts for the premiums on each of the policies. On the face of the receipt was the following:

"Acknowledges receipt of your remittance for payment described below, subject to terms, conditions and privileges of the policy named and the conditions printed on the back of this receipt."

The reverse side of each receipt provided:

"Any check, bank draft, or money order given in exchange for this receipt will be considered payment of the premium for which this receipt is issued, provided such check, draft, or money order is actually paid to the company on presentment for payment in due course of business.

"The acceptance of any premium by the company after the expiration of the days of grace provided by the policy is not to be construed as a waiver of the

517

conditions of the policy as to future payments nor as establishing a course of dealing between the company and the holder of the policy.''

It was further stipulated on the hearing of this cause that upon receiving notice on August 14, 1948 of the dishonor of said check, defendant declared each policy lapsed and null and void because of nonpayment of the payment due July 1, 1948, and on the same day defendant mailed plaintiff a letter advising him of the dishonor of the check and inclosed the check. The letter further advised plaintiff that the receipts hereinabove referred to were invalid and that reinstatement was subject to plaintiff furnishing evidence of insurability and paying the overdue instalments. Defendant also offered to send reinstatement blanks.

Plaintiff mailed a post office money order for $11.18 on August 17, 1948, to the defendant herein and requested defendant to accept it in payment of the July instalment. In reply to this request defendant, by a letter dated August 19, 1948, advised plaintiff that the money order could not be accepted until plaintiff qualified for reinstatement as required by the policies, and told plaintiff that he had thirty days to arrange for payment after July 1, 1948; advised him how to proceed for reinstatement; and told him the money order would be held in suspense, subject to plaintiff's control, until the question of reinstatement was concluded, when the check would be applied to the premium, if reinstatement were approved, or returned to him if reinstatement was not approved. On August 30, 1948, plaintiff's attorney wrote a letter requesting that defendant waive its requirement that plaintiff take a physical examination and reinstate the policies, and this request was declined by the defendant herein by its letter dated September 2, 1948. Plaintiff has never applied for reinstatement, and on September 9, 1948, defendant herein returned plaintiff's money order of August

17, 1948. The evidence further discloses that in October 1948, plaintiff made an attempt to pay the July and October instalments but the payment tendered was declined by the defendant herein. After hearing this matter, the chancellor ordered that the prayer of plaintiff for reinstatement of the policies be granted, and a signed decree was filed, ordering the policies to be reinstated on the records of the defendant, to the same effect as if said policies had never been lapsed, and the clerk was ordered to turn over to the defendant the premiums paid by plaintiff into the court, and an order was entered against defendant for costs.

On this appeal defendant contends that the court was in error in ordering the reinstatement of the policies sued upon for the reasons: (First) That it is uniformly held that life insurance policies lapse upon the nonpayment of premiums within the grace period, especially where the policies provided for lapse and forfeiture, without further notice to the insured; (Secondly) The check of Charles Grisham was not received in payment of premiums, except upon the condition that the check be paid upon presentment for payment in due course of business, which condition is uniformly recognized as being valid; and (Third) That defendant did not waive the right to lapse the policies and to forfeit them for failure to pay the premiums on the day called for, and there is nothing in its conduct which would estop defendant from claiming the forfeiture.

██ The facts in this case are practically undisputed but the parties hereto are in disagreement as to the proper application of the law thereto. The plaintiff contends, in answer to the contentions advanced by the defendant herein, that the defendant was without the right to cancel the policies for the nonpayment of the premiums, and directs our attention to that line of authorities which frown upon forfeiture of policies of insurance. The principles governing the interpreta-

tion and construction of insurance contracts do not differ from those controlling in other contracts, the rule being that they must be construed according to the sense and meaning of the terms which the parties used (*Moscov v. Mutual Life Ins. Co. of New York,* 387 Ill. 378; *Dempsey v. National Life & Accident Ins. Co.,* 338 Ill. App. 109). It seems to be the well-established law of this State that courts cannot under the guise of construction make a new contract for the parties (*Zitnik v. Burik,* 395 Ill. 182, 186).

██ The condition in a policy of life insurance that the policy shall cease if the stipulated premiums shall not be paid on or before the day fixed, is of the very essence and substance of the contract against which even a court of equity cannot grant relief (*Keller v. North American Life Ins. Co.,* 301 Ill. 198, 207). It appears that such a provision in a policy is self-executing and no notice of lapse or forfeiture is required (*Kahn v. Continental Casualty Co.,* 391 Ill. 445, 452).

██ The Grisham check was accepted upon the condition that it would be honored upon presentment in due course of business, and when not so paid, it did not amount to a payment of the premiums (*Stephens Engineering Co. v. Industrial Commission,* 290 Ill. 88). There is nothing in the evidence in this case that would in any way support the contention advanced that the defendant was estopped to declare the policies lapsed and forfeited. The burden of proving estoppel is upon the plaintiff who asserts it (*Kobzina v. Empire State Ins. Co.,* 289 Ill. App. 157, 161), and that burden has not been met in this case.

██ The plain and unambiguous language contained in the policies involved in this litigation admits of but one construction and that construction is that they mean exactly what they say and the provisions therein for the payment of the premiums on said policies not having been met and complied with, the defendant com-

pany was within its rights in cancelling the policies. The action of the chancellor in ordering the policies reinstated is hereby reversed.

*Reversed.*

SCHEINEMAN, P. J., and BARDENS, J., concur.