FIRST NATIONAL BANK OF DECATUR, Plaintiff-Appellant, v. MUTUAL TRUST LIFE INSURANCE COMPANY, Defendant-Appellee.

Fourth District   No. 4—86—0180

Opinion filed November 24, 1986.

WEBBER, J., dissenting.

Darrell E. Statzer, Jr., of Monroe, Wilson, Dyar, McDonald & Moss, of Decatur, for appellant.

Robert D. Owen and Robert M. Owen, both of Owen Roberts, Ltd., of Decatur, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On September 24, 1985, plaintiff, First National Bank of Decatur, brought suit in the circuit court of Macon County against defendant, Mutual Trust Life Insurance Company, seeking to recover as assignee

of a policy of life insurance issued by defendant on the life of Angelo Drakos, who was then deceased. After a subsequent amendment, defendant moved to dismiss the amended complaint, and, after a hearing, the court dismissed the complaint in bar of action on January 16, 1986. Plaintiff's subsequent motion for reconsideration or, in the alternative, for leave to file a second amended complaint was denied on March 6, 1986. Plaintiff has appealed. We affirm.

■■ On appeal, plaintiff maintains that the ruling of the trial court was in error because: (1) section 234(1) of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 846(1)) prohibited a lapse or forfeiture of the policy unless certain notices were given, and the complaint alleged a failure to give those notices; and (2) the complaint raised other grounds for relief that had never been ruled upon by the trial court. The question has also arisen as to whether a policy can be forfeited or lapse without an affirmative declaration by the insurer. The only allegation that such a declaration had taken place was the statement in the complaint that defendant had informed plaintiff of its having forfeited the policy on September 16, 1983. As we will explain, any forfeiture of the policy on that date would have been premature.

Section 234 of the Illinois Insurance Code provides in part:

"(1) No life company doing business in this State shall declare any policy forfeited or lapsed *within six months after default in payment of any premium installment or interest or any portion thereof,* nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, installment or interest, or any portion thereof, required by the terms of the policy to be paid, *within six months from the default in payment of such premium, installment or interest,* unless a written or printed notice *** shall have been duly addressed and mailed with the required postage affixed, to the person whose life is insured, or the assignee of the policy, (if notice of assignment has been given to the company) at his last known post office address, at least fifteen days and not more than forty-five days prior to the day when the same is due and payable, before the beginning of the period of grace ***." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 73, par. 846(1).

Section 234(1) is stated in terms of prohibiting either a declaration of forfeiture or lapse or of a forfeiture or lapse taking place (apparently without any declaration) within a six-month period after default unless the required notice was given to the insured and, here, the plaintiff as assignee of the insured. Thus the section clearly contemplates that a forfeiture or lapse can be declared or can occur

merely by lapse of time without affirmative act by the insurer. No case has been called to our attention which requires an affirmative act by the insurer to cause a policy to lapse for nonpayment of premium where, as here, the policy does not require such an act.

The complaint alleged that no section 234(1) notice had been given to plaintiff. As we have stated, the complaint also alleged that defendant had informed plaintiff that the policy had been declared forfeited on September 16, 1983, which was less than six months from May 1, 1983, the first day upon which the complaint indicated that a failure to pay a due premium had occurred. Accordingly, any such forfeiture or lapse was of no force or effect. The giving of any such declaration of forfeiture would also appear to have been a violation of section 234(1). However, we are unaware of any rule that the making of any such improper declaration would prevent the policy from subsequently becoming lapsed, at least after the expiration of the 6-month period of section 234(1) and the 31-day grace period of the policy. A sanction of prohibiting a policy from ever lapsing for nonpayment of a premium because of a premature declaration of forfeiture would be extraordinarily severe. Such a sanction would be particularly extraordinary here where there is no allegation of detrimental reliance on any such premature declaration of forfeiture.

Notably, section 234(1) requires a notice before the premium becomes due. It does not require any notice that a premium has not been paid. Once the 15- to 45-day period prior to the due date has passed, compliance with the notice requirements in regard to that premium can never be made. The basic dispute is whether the timely giving of notice is required only, as section 234(1) would seem to require, if forfeiture or lapse is claimed to have occurred within the six-month period or, at most, that period plus a time measured by the grace period of the policy. We express no opinion as to whether the six-month period begins to run on the due date or at the expiration of the grace period. However, plaintiff maintains that section 234(1) is, at best, ambiguous and should be construed against the insurer. Plaintiff also asserts that language in the opinions in Illinois decisions indicates that the notice requirement is not limited to lapses and forfeitures occurring within the six-month period.

In support of its contention that section 234(1) is applicable to forfeitures or lapses occurring at any time, plaintiff cites *Baxter v. Metropolitan Life Insurance Co.* (1925), 318 Ill. 369, 149 N.E. 243, *DC Electronics, Inc. v. Employers Modern Life Co.* (1980), 90 Ill. App. 3d 342, 413 N.E.2d 23, and *Stevenson v. Prudential Insurance Co.* (1941), 308 Ill. App. 401, 32 N.E.2d 175. At oral argument, it also

called our attention to a recent decision of this court in *Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App. 3d 752, 488 N.E.2d 1338. The case of *Baxter* did not concern a requirement that the insured give notice of the due date or premiums. There, the requirement that premiums be paid within the grace period after the due date as provided in the policy was held to have been waived by the conduct of the insurer's agent in previously accepting tardy payments.

In *DC Electronics*, the appellate court held that a summary judgment in favor of the beneficiary of a life-insurance policy was required under the following circumstances. The policy had an expiration date of June 1, 1978, with an option provision whereby it could be renewed for an additional five-year period upon the payment of a premium on or before the termination date. On April 5, 1978, the insurer sent the insured a letter describing his right to renew, but the letter did not conform fully with section 234(1). The insured died on November 4, 1978, without having paid the June 1, 1978, renewal premium. Then, on November 13, 1978, the owner of the policy tendered the June 1, 1978, premium. The appellate court concluded that section 234(1) was applicable to the requirement for payment of the June 1, 1978, renewal premium and that absent compliance, the owner had an additional period of six months to cure the default. The *DC Electronics* decision did not make clear whether, absent compliance with section 234(1), the grace period would be 6 months or the 31-day grace period of the policy plus 6 months. In any event, the opinion made clear that the court ruled as it did because the six-month period had not expired when the premium was tendered. The decision in *DC Electronics* is entirely consistent with the ruling of the trial court here.

In *Stevenson*, the insured died on September 21, 1938. The June 16, 1938, premium had not been paid in full. On August 30, 1938, the insurer sent a notice to the insured referring to the premium due September 16, 1938, and stating that if it was not paid within the 31-day grace period of the policy, the policy would be forfeited. This notice had been given pursuant to section 234 of the Illinois Insurance Code. The *Stevenson* court held that by giving this notice and threatening a forfeiture in October 1938 for nonpayment of the September premium, the insurer waived a forfeiture for nonpayment of the June premium. The appellate court then stated:

> "Moreover, we are further of opinion that under the provisions of the statute above quoted, the policy could not be declared forfeited by the company unless and until the notice required by the statute was given, and the insured having died

before the time specified in the notice had expired, the policy was in full force and effect." *Stevenson v. Prudential Insurance Co.* (1941), 308 Ill. App. 401, 410, 32 N.E.2d 175, 179.

The foregoing language of the *Stevenson* court is confusing. The insurer attempted to avoid the policy on the basis of the failure to pay the June premium, but the notice in question concerned the September premium. The opinion is silent as to whether a similar notice was sent prior to the due date of the June premium. The first portion of the quoted language would seem to refer to the requirement that a notice should have been given prior to the due date of the June premium, but the latter portion seems to indicate that forfeiture could not be obtained for failure to pay the September premium because the grace period of the policy had not expired. In any event, the language has little applicability to the question of whether the statutory requirement for notice applies to forfeitures or lapses for nonpayment more than six months after the expiration of the grace period of a policy. In *Stevenson*, the period between the June default and the insured's death was much less than six months.

In *Bellmer*, the insured failed to pay a premium due in October 1978 on time but tendered a payment on December 31, 1978. The tender was refused by the insurer because it was not paid within the 31-day grace period provided by the policy. The insured died on July 14, 1979, and the insurer refused to pay under the policy, contending that it had lapsed because of the failure to pay the October 1978 premium. Apparently, the insurer had given notice to the insured in the form required by section 234(1) in regard to the October premium, but had not given such notice to the owner. This court held that the policy had not lapsed because section 234(1) required notice to the owner as well as the insured. Notably, as in *DC Electronics*, a premium had been tendered within six months of the due date of the unpaid premium. Thus, that court did not pass upon the controlling question presented here as to whether, when more than the grace period of the policy and the six-month period of section 234(1) have passed without payment of a premium due, the policy may be treated as forfeited or lapsed even though no notice in conformity with section 234(1) was given.

We recognize the abhorrence which the law holds for forfeitures and its policy to construe ambiguities in insurance contracts in favor of insureds, beneficiaries, and assignees. However, we can give no logical interpretation to section 234(1) other than that its prohibition against forfeitures and lapses refers only to those occurring within six months of the default in payment of premium. That is what it clearly

states. Nor can we interpret section 234(1) to require that a declaration of lapse or forfeiture be made. It indicates an assumption to the contrary. Several States have statutory provisions such as section 234(1). No decision of a court of review has been called to our attention setting forth a ruling contrary to our decision here.

We can conceive of procedures in regard to forfeitures and lapses of life insurance policies that are more equitable to insureds, beneficiaries, and assignees of life insurance policies than those required by section 234(1). However, we do not deem it appropriate for us to impose additional notice requirements to those prescribed by the legislature.

We conclude that the trial court properly held that failure of defendant to give notice in conformity with section 234(1) did not prevent lapse of the policy here.

■■ ■ Plaintiff also contends that its complaint stated a cause of action for various improper claims practices by defendant. One such act alleged was that defendant, after receiving notice of the assignment to plaintiff, had permitted the insured to borrow money against the cash-surrender value of the policy. This would have damaged plaintiff only if the policy had not lapsed. The other complaints are similarly based upon the theory that the policy had not lapsed. Plaintiff also contends that it should have been permitted to file a second amended complaint. However, the trial court has great discretion as to permitting additional amendments. (*Lowrey v. Malkowski* (1960), 20 Ill. 2d 280, 170 N.E.2d 147, *cert. denied* (1961), 365 U.S. 879, 6 L. Ed. 2d 191, 81 S. Ct. 1029.) That discretion was not breached here.

For the reasons stated, we affirm the judgment dismissing the complaint in bar of action.

Affirmed.

McCULLOUGH, P.J., concurs.

JUSTICE WEBBER, dissenting:

I cannot accede to the decision of my learned colleagues.

We are faced with two delinquent parties: the plaintiff bank failed to police its loan, and the defendant insurance company violated the statute in several particulars.

As to the finger pointing, it requires no citation of authority to say that all well-pleaded facts in a complaint must be taken as true when the complaint is dismissed on motion as being insufficient as a matter of law. I note that nowhere in its complaint does the bank al-

lege that it took any action to ascertain that Drakos was current in his payment of premiums.

With regard to the insurance company, the complaint alleges that the bank was never given any notice of premiums due and that upon application for the proceeds under its assignment, it was informed that the policy had been forfeited on September 16, 1983.

First, anent the premium notice, I do not agree that the statute is ambiguous. It states clearly that no forfeiture can be declared within six months after default in payment unless notice has been given to the insured or his assignee, if notice of the assignment has been given, at least 15 days and not more than 45 days prior to the due date before the grace period.

This is not an "either-or" option, it is an "or-if." If an assignment has been made (and in this case the assignment was acknowledged by the company), the assignee is entitled to notice. It is not sufficient to notify the insured. In the instant case it stands admitted that notice was given to Drakos, the insured, but none was ever given to the bank, the assignee. This alone, in my judgment, would be sufficient to deny the company's motion.

Next, the record shows that the company denied the claim because the premium due on May 1, 1983, was not paid and that therefore the company forfeited the policy on September 16, 1983, after applying the cash-surrender value in lieu of premium payments. Again, the statute is plain that no lapse or forfeiture can be declared "within six months" after default. Six months from May 1 is November 1. The declaration of forfeiture was premature by at least six weeks. To me it is patent that "within six months" must be interpreted as a grace period in addition to whatever other grace period may be in the policy.

Although I believe that the two foregoing statutory breaches are sufficient to dispose of the case, some discussion of the entire problem of forfeiture is in order.

The statute furnishes no specific guidelines other than to fix the time frame, and I am aware of no case authority on the specific point. It speaks of a policy being "forfeited or lapsed." I find these terms essentially synonymous. The nouns from which the verbs are derived are defined in Black's Law Dictionary 1022-23, 778 (4th ed. 1951) as:

> "LAPSE. The termination or failure of a right or privilege through neglect to exercise it within some limit of time, or through failure of some contingency."

> "FORFEITURE. Something to which the right is lost by the commission of a crime or fault or the losing of something by

way of penalty."

In either event, the statute requires the company to "declare" the lapse or forfeiture. Webster's New International Dictionary 681 (2d ed. 1941) defines "declare" as:

"To make known explicitly, esp. by language; to communicate clearly to others, whether by acts, words, writing, or signs; to publish; announce; as, to *declare* war."

It follows that before a company may "declare" a policy lapsed or forfeited, it must take some positive action. Simply closing the file is insufficient.

It has been accepted doctrine for many years that forfeitures are not favored in the law. This has been specifically applied to insurance contracts. (*Old Colony Life Insurance Co. v. Graves* (1915), 200 Ill. App. 71 (abstract of opinion).) In that case the insured held a policy with a fraternal organization whose bylaws required notice of assessments be given to him. The insured apparently moved about, following his trade as a printer. Assessment notices did not reach him, although he kept the company aware of his address from time to time. The company forfeited the policy, and the court said:

"Furthermore, it does not appear that the notice of assessments, which is provided for by Section 4 of Article 5 of the By-Laws of the Knights of the Globe Mutual Benefit Association, was mailed to his post office address; and this was required, before a forfeiture could be declared and made legally effective.

It is clear, that the right to declare a forfeiture, was dependent on the giving of the notice, as well as the failure of the insured to pay the assessment which he was obligated to pay. (N. W. Traveling Men's Assn. v. Schultz, 148 Ill. 304.) Forfeitures are not favored in the law." Slip op. at 358.

In other areas of the law the question of forfeiture has caused much litigation. This is especially true in the case of contracts for deed. Commonly such contracts contain provisions for forfeiture on nonpayment of installments due together with provisions for notice. It is generally held that no forfeiture can be made unless the notice provisions of the contract are complied with by the seller. *Lovins v. Kelley* (1960), 19 Ill. 2d 25, 166 N.E.2d 69.

Similar authority, albeit scant, exists in the field of insurance law. In *Kahn v. Continental Casualty Co.* (1945), 391 Ill. 445, 63 N.E.2d 468, the suit was over a health and accident policy. Among other contentions, the insured claimed that the policy could not lapse without notice to him. The court brushed the contention aside, saying: "By

the contract it was provided that the policy would lapse if default was made in the payment of the premium. No notice was required." (391 Ill. 2d 445, 452, 63 N.E.2d 468, 471.) The *Kahn* case was cited for the same proposition in *Sistler v. Illinois Bankers Life Assurance Co.* (1950), 341 Ill. App. 512, 520, 95 N.E.2d 507, 511.

Admittedly, the policy in the instant case likewise contains no specific provision for notice of forfeiture or lapse. The only provision relating to the question is entitled "Non-Forfeiture Provisions" and states, "Upon default in premium payment one of the following provisions will apply"; then follow three options: extended-term insurance, paid-up insurance, and cash surrender.

However, I do not feel that this answers the question because the statute becomes part of the policy just as much as if it were written into it *in haec verba.* Since the *Kahn* case concerned a health and accident policy, the court had no occasion to consider the statute, and the *Sistler* case, although concerned with a life policy, woodenly followed *Kahn* without reference to the statute which was enacted some 13 years before.

This brings me full cycle back to the interpretation of the statute. The general principles of statutory construction are well known, but a brief recapitulation may be in order.

The primary function of the courts in interpreting and construing statutes is to ascertain and give effect to the legislature's intent in enacting the statute. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151, 485 N.E.2d 1076, 1079.) Courts should first look to the statutory language as the best indication of intent (109 Ill. 2d 143, 485 N.E.2d 1076) and examine the entire statute (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341, 473 N.E.2d 1313, 1315). Additionally, courts seek to determine the objective the statute sought to accomplish and the problems it sought to remedy. (105 Ill. 2d 336, 473 N.E.2d 1313.) When the terms of a statute are not specifically defined, they must be given their ordinary and popularly understood meaning but be construed in light of the purpose of the legislation. *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937, 942.

In my judgment the purpose of the statute is to afford some measure of protection to a policyholder. He is given an additional six-month grace period before the policy may be terminated. In order to comply with this protection, the company must "declare" that the policy is forfeited or lapsed. As previously indicated, I believe that this requires some positive action on its part, *i.e.,* notice of intent to exercise its statutory right served upon its policyholder. With modern

means of bookkeeping and the generation of notices by computer, this would seem a small burden.

I would therefore hold that any life company cannot exercise its right of lapse or forfeiture unless, in addition to the notice of premium due, it serves upon the insured a notice of intent setting forth the date upon which the policy will be lapsed or forfeited unless all defalcations are made good beforehand.

If the theory of the majority is correct, that the provisions are self-executing, it will place the policyholder in an unfavorable position. Banks and other lending institutions will become reluctant to take life policies as collateral for loans. In many instances a life insurance program is the principal asset of a borrower's estate.

I would reverse the trial court and remand for trial on the issues. I would also allow the amendment to the complaint. It may well develop at trial that the bank is entitled to nothing for reasons which are not apparent on the pleadings, but the question should not be disposed of as a pleading matter. At a minimum, if the bank is to recover, it should be required to pay whatever premiums were due from the date of default to the date of Drakos' death.