**CLARIN CORPORATION,**
**Plaintiff–Appellant,**

v.

**MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY,**
**Defendant–Appellee.**

No. 94–1413.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1994.

Decided Dec. 30, 1994.

Stuart Smith (argued), Gordon & Glickson, Chicago, IL, for plaintiff-appellant.

Joseph J. Hasman, Ernest W. Irons, Sherri L. Giffin (argued), Peterson & Ross, Chicago, IL, for defendant-appellee.

Before CUDAHY, ESCHBACH, and EASTERBROOK, Circuit Judges.

ESCHBACH, Circuit Judge.

In this diversity action under Illinois law, Clarin Corporation ("Clarin") appeals the district court's grant of summary judgment in favor of Massachusetts General Life Insurance Company ("Massachusetts General"). Clarin sued Massachusetts General for breach of a policy of insurance after Massachusetts General terminated a life insurance policy for nonpayment of premium without sending notice to the named insured as required by § 234(1) of the Illinois Insurance Code. The district court rejected Clarin's claim, ruling that notice to the owner was sufficient in this case, 842 F.Supp. 328. For the reasons below, we reverse and remand.

## I.

On December 22, 1986, Clarin entered into a written employment agreement with Carl Hammond ("Hammond"). The Employment Agreement established a five-year term of employment, beginning in 1987 and ending in 1992, in which Hammond would receive a guaranteed fixed sum of money payable in equal amounts annually, or in a lump sum in the event Hammond died during the term of the Agreement. As part of the contract, Clarin agreed to purchase and help maintain an insurance policy on Hammond's life to ensure payment of the lump sum due if Hammond died within five years. Clarin agreed to use the proceeds of this policy to pay Hammond's beneficiaries the amount still due under the Employment Agreement.[1]

Pursuant to the Agreement, Clarin procured a policy of insurance on Hammond's life, first with Transamerica, and then with Massachusetts General. The policy named Hammond as the insured and Clarin as the owner and beneficiary. On the Massachusetts General policy application, question "8(a)" asked "To whom shall premium notices be mailed?" Three boxes were provided for an applicant to check in response to this question: "Proposed Insured," "Proposed Owner," or "Other." Jack E. Hoffman ("Hoffman"), the President of Clarin, instructed Massachusetts General's agent to

---

1. Paragraph five of the Employment Agreement provided as follows:

    Clarin shall procure and maintain group term life insurance coverage for Hammond's beneficiaries in the event Hammond should die during the term (provided Hammond is insurable at normal rates). Each policy shall provide benefits equal to the compensation payable to Hammond under the provisions of Paragraph 4 above for the balance of the term (e.g., should Hammond die on March 31, 1988, the life insurance benefit payable to his designated beneficiaries would be $459,270.00, the compensation to which he would have been entitled for the remainder of the term.) During the last two (2) Contract Years of the Term, Hammond shall pay one-half (½) of the premiums to maintain said insurance in effect.

send premium notices to the "Proposed Owner," i.e., Clarin. The record does not indicate whether Hammond was present when this choice was made.[2] In any event, the application was marked accordingly and no further discussion took place as to the meaning or impact of this choice.

Clarin thus received all premium notices and assumed its responsibility of making the premium payments due on the policy of life insurance. Throughout the period of coverage, Clarin often failed to pay the premiums by the due date specified on the policy. Generally, though, Clarin made the payment within the sixty-one day grace period and pursuant to the conditions specified on the reverse side of Massachusetts General's Notice of Life Policy Lapse. In the beginning of April, 1991, Clarin received a Notice of Life Premium Due on April 26, 1991. The reverse side of the notice provided that if the premium was "not paid on or before the due date or within the policy grace period, the policy and all payments thereon become forfeited and void, except as provided by the policy's nonforfeiture provisions, if any, or by law." No notice was ever sent to Hammond. Clarin failed to make the payment due on April 26, 1991 and did not tender payment of the premium until June 28, 1991, sixty-three days later. Hammond died on July 9, 1991 and Massachusetts General denied Clarin's claim for the proceeds, informing it that the policy had been terminated for nonpayment of premium. Massachusetts General returned Clarin's last premium payment.

On December 26, 1991, Clarin brought this action seeking payment of the proceeds due under the insurance policy. It alleged that the policy could not have lapsed within six months after the failure to pay the premium, because Massachusetts General failed to comply with § 234(1) of the Illinois Insurance Code, which requires notice to be sent to the named insured. Both parties moved for summary judgment. The district court initially referred this case to a magistrate judge, who recommended that neither side's motion be granted, in light of the factual disputes necessary to determine whether Hammond had waived his right to notice under the statute or designated Clarin as his agent for purposes of receiving notice. The district court, however, chose not to adopt the recommendation of the magistrate judge. It concluded that, in this case, notice to the owner of the policy was both necessary and sufficient under the statute to cause the policy to be forfeited and it therefore granted summary judgment in favor of Massachusetts General. Clarin filed a timely notice of appeal under 28 U.S.C. § 1291.

## II.

Generally, we review a grant of a motion for summary judgment *de novo*. *Colip v. Clare*, 26 F.3d 712, 714 (7th Cir.1994); *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir.1994). Massachusetts General argues that in this case it is more appropriate to review the district court's order for clear error. In the context of motions for summary judgment, this court has limited its application of a clear error standard of review to cases in which "(1) the facts are undisputed, (2) the trial court is merely applying the law to the facts, and (3) the nonmoving party has made no request for a jury trial." *Jurcev v. Central Community Hosp.*, 7 F.3d 618, 623 (7th Cir.1993). Given this formulation, clear error review is not appropriate here. Clarin made a demand for a jury trial when its complaint was first filed and that demand was not withdrawn. Massachusetts General asserts that this demand has been implicitly waived by Clarin's filing of its motion for summary judgment. However, Clarin's filing of a motion for summary judgment does not waive its right to a jury

---

2. Jack Hoffman stated in his undisputed affidavit that "[a]s the President of Clarin Corporation, I executed the application for insurance which is part of the policy of insurance in question attached as Exhibit B to the Complaint. The application was also signed in my presence by Carl Hammond." Affidavit at ¶ 6. It could reasonably be inferred from this that Hammond was not present when the application was executed by Hoffman and the answer to question 8(a) was made, but was contacted later for his signature. On the other hand, it could also reasonably be inferred from this that Hammond was present during the execution of the application and also signed the application at that time. However, neither the magistrate judge nor the district court made a finding on this question and the record is not clear.

trial if the motion is denied. *American Nat'l Bank and Trust Co. v. United States,* 832 F.2d 1032, 1036 (7th Cir.1987); *May v. Evansville–Vanderburgh School Corp.,* 787 F.2d 1105, 1115 (7th Cir.1986) (citing 10A Wright, Miller & Kane, Federal Practice & Procedure § 2720 (2d ed. 1983)). Furthermore, this case does not involve the mere application of the law to a set of facts; rather, the district court primarily reached a legal conclusion without any significant examination of the facts at all. Thus, we will review this case *de novo.*

Clarin's principal argument on appeal is that notice was not provided to the named insured as required by Illinois law.[3] Under § 234(1) of the Illinois insurance code, an insurance company must send written notice to the named insured informing him of the possibility of forfeiture or be barred from terminating the policy within six months after default:[4]

No life company doing business in this State shall declare any policy forfeited or lapsed within six months after default in payment of any premium installment or interest or any portion thereof, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due any premium, installment or interest, or any portion thereof, required by the terms of the policy to be paid, within six months from the default in payment of such premium, payment or interest, unless a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy, the place where it should be paid and the person to whom the same is payable, shall have been duly addressed and mailed with the required postage affixed, to the person whose life is insured, or the assignee of the policy, (if notice of assignment has been given to the company) at his last known post office address, at least fifteen days and not more than forty-five days prior to the day when

the same is due and payable, before the beginning of the period of grace.... Such notice shall also state that unless such premium or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void....

215 ILCS 5/234(1) (West 1992). Thus, under the plain language of the statute, there is no provision for substituting notice to the owner of the policy for notice to the named insured where the owner and the named insured are different. Notice may be sent to the assignee of the policy, but it is not clear what constitutes an assignment under the statute.

■ As a federal court sitting in diversity, we look to the courts of Illinois for guidance in determining the meaning of a statute. *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1404–05, 28 L.Ed.2d 822 (1971); *DeGrand v. Motors Ins. Corp.,* 903 F.2d 1100, 1103 (7th Cir.1990). Where the state supreme court has not ruled on an issue, decisions of intermediate state courts control unless there are persuasive indications that the highest state court would decide the issue differently. *L.S. Heath & Son v. AT & T Information Sys.,* 9 F.3d 561, 574 (7th Cir.1993) (citing *Hicks v. Feiock,* 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 1428 n. 3, 99 L.Ed.2d 721 (1988)). Illinois has established that "forfeiture of an insurance contract for nonpayment of premium is not favored in the law, and courts are prompt to seize upon circumstances which indicate a waiver of forfeiture." *Cullotta v. Kemper Corp.,* 78 Ill.2d 25, 34 Ill.Dec. 306, 310, 397 N.E.2d 1372, 1376 (1979). "[E]ven in doubtful cases, courts should be quick to find facts supporting coverage." *Bellmer v. Charter Sec. Life Ins. Co.,* 140 Ill.App.3d 752, 94 Ill.Dec. 945, 947, 488 N.E.2d 1338, 1340 (1986).

■ The district court concluded that the policy vested Clarin with the right to receive

---

**3.** Clarin also argued that, even if the notice was properly sent to it as owner of the policy, it was technically insufficient under § 234(1). We find this argument to be meritless and requires no further discussion in light of our decision in this case.

**4.** One might question whether, under Illinois law, Clarin is entitled to enforce a statutory duty to provide notice to Hammond, or whether only Hammond is entitled to complain of his lack of notice. However, neither party addressed this question in their briefs and it is accordingly waived.

§ 234(1) notice based on the answer to question 8(a) in the application and on the policy provision entitled "Policy Owner." This provision stated that "[d]uring the lifetime of the insured, the Owner alone has the right to receive all benefits and to exercise all rights provided in the policy." The district court then cited two Illinois cases, *Bellmer*, 94 Ill.Dec. at 950, 488 N.E.2d at 1343 and *DC Electronics, Inc. v. Employers Modern Life Co.*, 90 Ill.App.3d 342, 45 Ill.Dec. 690, 695, 413 N.E.2d 23, 28 (1980) for the proposition that such a provision in an insurance policy is an assignment clause. Therefore, according to the district court, it can deprive the named insured of his right to § 234(1) notice and vest that right in the owner of the policy. In both cases, however, the courts actually expanded the protection of the statute by requiring notice to be sent to the owner of the policy in addition to the named insured. *Bellmer*, 94 Ill.Dec. at 950, 488 N.E.2d at 1343; *DC Electronics*, 45 Ill.Dec. at 695, 413 N.E.2d at 28.

In *DC Electronics*, the named insured was originally the owner of the policy and his wife was the beneficiary. Under the terms of the policy, the owner was vested with the sole right to renew or convert the policy without evidence of insurability and all rights and privileges were vested in the named owner during the lifetime of the insured. A few months later, at the insured's request, the ownership and beneficial interest in the policy was transferred to his employer, DC Electronics, and a third party bank. Two years after these transactions, the life insurance company claimed it notified the named insured that coverage was due to terminate in order to give him an opportunity to renew the policy. While there was a dispute about whether this notice was ever received, the court found that the notice "failed to satisfy the time frame specified by the statute." *Id.*, 45 Ill.Dec. at 695, 413 N.E.2d at 28. Moreover, the court found that "[t]he notice also failed because it neglected to notify the owner of the policy that it would become forfeited and void unless the premium due was paid, as required by section 234(1)." *Id.* This notice to the owner, the court reasoned, was required under a liberal construction of the provision of the policy vesting all right of renewal in the owner. *Id.*, 45 Ill.Dec. at 694–95, 413 N.E.2d at 27–28. Since the notice to the named insured was deficient, and there was no notice to the owner as required under the policy, the court held that the insurance company could not have terminated the policy. *Id.*, 45 Ill.Dec. at 695–96, 413 N.E.2d at 28–29. Thus, there is no support for the district court's conclusion that notice to the owner alone would have been sufficient under *DC Electronics*.

The district court also read *Bellmer*, 94 Ill.Dec. 945, 488 N.E.2d 1338, to stand for the proposition that the policy can take away the statutory right to notice from the named insured and vest it in the owner alone. In *Bellmer*, the policy application provided that James Bellmer was the named insured and his wife, Amy, was the owner and beneficiary of the policy. The policy contained a provision, entitled "Ownership and control," which provided that, "unless otherwise designated in the application for this Policy," the insured was the owner of the policy, with all rights and privileges under the policy. *Id.*, 94 Ill. Dec. at 949, 488 N.E.2d at 1342. Thus, Amy Bellmer, as owner of the policy, was vested with these rights and privileges. This policy remained in effect after the two divorced and Bellmer directed the insurance company to send notices to his new address. Premium notices, thus, only went to James Bellmer and he defaulted on his payments before he died. After examining Illinois cases, including *DC Electronics*, the court concluded that Bellmer's wife was entitled to notice "in her own right." *Id.*, 94 Ill.Dec. at 950, 488 N.E.2d at 1343. Despite the existence of the "Ownership and control" clause, the court characterized this as a situation where " 'the owner of the policy' [was] different from 'the person whose life was insured' or his 'assignee,' " rather than determining that the clause had effected an assignment of the entire policy. *Id.*, 94 Ill.Dec. at 948, 488 N.E.2d at 1341. "[T]he statute expressly vests the person whose life was insured or his assignee with an enforceable right to certain notice; the application and the policy issued thereon vested this right in plaintiff as the owner." *Id.*, 94 Ill.Dec. at 950, 488 N.E.2d at 1343. Thus, "[t]he circumstances required here

that notice be sent to the last known address of the owner of the policy, and not just the insured, and it is only by this method that the insurer may argue it has fulfilled its duty and 'declare' any policy forfeited or lapsed. Any unwritten assumptions by the insurer ought not relieve it of its obligations under the policy or the statute." *Id.* This interpretation was subsequently confirmed in *First Nat'l Bank v. Mutual Trust Life Ins. Co.,* 149 Ill.App.3d 743, 103 Ill.Dec. 57, 60, 500 N.E.2d 1128, 1131 (1986), *aff'd* 122 Ill.2d 116, 118 Ill.Dec. 615, 617, 522 N.E.2d 70, 72 (1988), where the court wrote that "[t]his court held [in *Bellmer* ] that the policy had not lapsed because section 234(1) required notice to the owner as well as the insured."

Thus, under Illinois law, we find no support for the proposition that a policy ownership provision constitutes an assignment of the policy for the purposes of receiving notice under the statute.[5] The policy independently vested Clarin with a right to receive premium notices, but it did not take away Hammond's right to receive notice under § 234(1).[6] *See Bellmer,* 94 Ill.Dec. at 950, 488 N.E.2d at 1343. This conclusion comports with the practice in Illinois of reading insurance policies so that statutory provisions applicable to a contract of insurance and in existence at the time the contract was made form a part of that contract and the contract terms are construed consistent with the statute. *Harris v. St. Paul Fire & Ma-*

*rine Ins. Co.,* 248 Ill.App.3d 52, 187 Ill.Dec. 739, 742, 618 N.E.2d 330, 333 (1993); *Bellmer,* 94 Ill.Dec. at 947, 488 N.E.2d at 1340.

This does not end our analysis. Massachusetts General argues that Hammond's right to notice under the statute was assigned to Clarin, as the owner of the policy, when Clarin checked the box directing Massachusetts General to send premium notices to the owner in answer to question 8(a) in the policy application.[7] In neither *Bellmer* nor *DC Electronics* was a similar question asked in the application.[8]

■ Under Illinois law, an assignment occurs where there is a transfer of some identifiable interest from an assignor to an assignee. *Stoller v. Exchange Nat'l Bank,* 199 Ill.App.3d 674, 145 Ill.Dec. 668, 673, 557 N.E.2d 438, 443 (1990); *Klehm v. Grecian Chalet, Ltd.,* 164 Ill.App.3d 610, 115 Ill.Dec. 662, 665, 518 N.E.2d 187, 190 (1988). Although no particular form of assignment is required, a valid assignment must evidence the purpose to transfer ownership of the subject matter of the assignment and it must describe the subject matter of the assignment with sufficient particularity to render it capable of identification. *Crooks v. Hendricks (In re Estate of Crooks),* 266 Ill. App.3d 715, 202 Ill.Dec. 861, 867, 638 N.E.2d 729, 735 (1994); *Stoller,* 145 Ill.Dec. at 673, 557 N.E.2d at 443.

**5.** Other than citing *Bellmer* and *DC Electronics,* Massachusetts General does little to add to or supplement the district court's argument that the policy ownership provision constituted an assignment of the policy for purposes of receiving notice under § 234(1). In fact, Massachusetts General even admits in its brief that "no written assignment exists." (Brief at 19). Given *Bellmer*'s holding that both the owner and the insured should receive notice under § 234(1), we must reject Massachusetts General's argument.

**6.** Since Hammond was still bound to his original agreement with Clarin to share the responsibility to pay premiums in the final two years of the employment contract, it is reasonable to require Massachusetts General to send notice under § 234(1) to both Hammond and Clarin. That Clarin had actually paid all premiums up to that point did not foreclose the possibility that Hammond would have to assume his responsibility at a future date. This is consistent with Clarin's

argument that Hammond retained a continued interest and obligation in the maintenance of the policy which required conformance with the statutory notice requirements.

**7.** Although § 234(1) only mandates notice to "the assignee of the policy" and not an assignee of an individual right under the policy, § 245.1 permits the owner of any right under the policy to assign that right. *See Bellmer,* 94 Ill.Dec. at 948, 488 N.E.2d at 1341.

**8.** In *Bellmer,* the applicants requested that premium notices be mailed to "residence." *Id.,* 94 Ill.Dec. at 948, 488 N.E.2d at 1341. This appears to assume that notices will be sent to the named insured, since the application did not ask about the owner of the policy until later. However, since the named insured and the owner and beneficiary then lived at the same residence as husband and wife, this is not similar to the instant case.

■ Massachusetts General claims that the subject matter of assignment was Hammond's right to § 234(1) notice and the means by which he evidenced his intent to assign the right was signing the application in which Clarin had checked the "owner" box in answer to the question of where it wanted the premium notices sent. The insurance policy does not define "premium notices" and the record fails to disclose whether any discussion took place among Hammond, Clarin and Massachusetts General as to its meaning or import or whether Hammond was even present when Jack Hoffman directed Massachusetts General to send notices to Clarin.[9] The term has two potential meanings. One meaning is notice under the conditions specified by § 234(1) of the Illinois Insurance Code. This requires the insurer to mail the notice to the named insured or his assignee between fifteen and forty-five days of the date the premium is due, specifying the amount of the premium due, the place where it shall be paid, and the person to whom it is payable. The notice must also state that unless the premium is paid when due, the policy and all payments will become forfeited and void. Thus, § 234(1) notice is designed to provide a warning to the insured so that the insurance company cannot "keep[ ] silent and induc[e] the insured to forget to pay the premium." *DC Electronics*, 45 Ill.Dec. at 695, 413 N.E.2d at 28 (quoting *Shiaras v. Chupp*, 18 Ill.App.3d 722, 726, 310 N.E.2d 481 (Ill.App.Ct.1974)).

The second meaning of "premium notice" is notice of premium due which does not seek to comply with § 234(1). This is the plain meaning of premium notices, unadorned with warnings or specific time requirements. Since § 234(1) notice is not mandatory, the insurer must only comply with the statute if it desires to terminate a policy within six months after default of payment. The Illinois Supreme Court has held that an insurer

is fully entitled to terminate a policy of insurance for nonpayment of premium without conforming to § 234(1) as long as termination occurs more than six months after default. *First Nat'l Bank v. Mutual Trust Life Ins. Co.*, 122 Ill.2d 116, 118 Ill.Dec. 615, 617, 522 N.E.2d 70, 72 (1988). In this situation, an insurer may have opted out of the statutory scheme in favor of sending a mere billing statement outside the statutory time frame or without the additional warning that nonpayment would result in forfeiture. *See DC Electronics*, 45 Ill.Dec. at 695, 413 N.E.2d at 28 (notice to the named insured omitted part of the information required under § 234(1) and was sent more than forty-five days before the date the policy terminated.) Rather than acting under a duty to reasonably remind its insured that a premium is due, the insurer who is willing to wait six months is only making a choice to provide that reminder. *Cf. DC Electronics*, 45 Ill. Dec. at 695, 413 N.E.2d at 28 (quoting *Shiaras v. Chupp*, 18 Ill.App.3d 722, 726, 310 N.E.2d 481 (1974)).

Hammond does not appear to have assigned his right to receive § 234(1) notice merely by signing the application in which Jack Hoffman directed Massachusetts General to send premium notices to Clarin. Obviously, if Hammond was not present when this choice was made, it can hardly be said that he intended to assign the right to receive notice. Even if he was present, question 8(a) is not sufficient to assign Hammond's right to notice under the statute. As our previous discussion indicates, Illinois law recognizes two forms of "premium notices." Moreover, Massachusetts General's policy of insurance does not reveal the significance of the question at all. The policy does not limit Massachusetts General's right to terminate the policy upon the sending of premium notices, nor does it indicate that premium notices enable Massachusetts General to more

---

9. Of course, we recognize that Hammond's signature constitutes agreement to the terms of the insurance policy and parol evidence is inadmissible to alter this agreement. *See Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138 (7th Cir.1985) (applying Illinois law). However, the question of whether Hammond's answer to question 8(a) constituted an independent agreement to assign Hammond's statutory rights is a ques-

tion of intent "to be derived not only from the instrument executed by the parties, but also from the surrounding circumstances." *Stoller*, 145 Ill. Dec. at 673, 557 N.E.2d at 443. Additionally, if an agreement is found, but is ambiguous, then the surrounding circumstances may also be examined. *See In re Marriage of Olsen*, 229 Ill. App.3d 107, 171 Ill.Dec. 39, 45–46, 593 N.E.2d 859, 865–66 (1992).

promptly terminate the policy.[10] Massachusetts General does implicitly commit to sending premium notices by asking question 8(a). However, under a reasonable reading of the policy, this commitment was for the convenience of the customer, and Massachusetts General certainly does not contend that it was a condition precedent to collecting the premiums. Given the ambiguity in the insurance policy as to what "premium notices" meant, we can find no evidence that Hammond intended to assign a right of this magnitude, if he even was aware of the existence of question 8(a) at all. *See Heritage Bank v. Recreational Retail Builders, Inc.*, 97 Ill. App.3d 748, 53 Ill.Dec. 189, 192–93, 423 N.E.2d 573, 576–77 (1981) (assignment of intangible property "hereafter owned" not enough to evidence intent to include $230,000 asset). Under Illinois law, "if a provision of an insurance policy is ambiguous, the provision must be construed in favor of the insured." *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361 (7th Cir.1987); *United States Fire Ins. Co. v. Schnackenberg*, 88 Ill.2d 1, 57 Ill.Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981); *Dora Township v. Indiana Ins. Co.*, 78 Ill.2d 376, 36 Ill.Dec. 341, 342, 400 N.E.2d 921, 922 (1980). Thus, the alleged subject matter of the assignment was not sufficiently identified for the answer to question 8(a) to evidence Hammond's intent to make an assignment.[11]

### III.

For the reasons above, we REVERSE the judgment of the district court and REMAND for proceedings consistent with this opinion.

---

10. Under the section entitled "Premiums and Reinstatement," the policy provides the conditions for "Default. If any premium is not paid when due or within the Grace Period, the policy will terminate except as provided in the Reinstatement Provision." No mention is made of premium notices.

11. Massachusetts General argues, in the alternative, that Clarin acted as Hammond's agent in receiving notice under the statute, or that Hammond waived his right to notice under the statute. The district court chose not to reach these issues in its consideration of the case. We find

the record insufficiently developed to address these issues since we do not know whether Hammond participated in any discussion regarding the choice to have premium notices sent to Clarin, or whether he was even present at the exact time Clarin's president directed Massachusetts General's agent to send premium notices to Clarin. The district court should consider whether the concepts of agency or waiver apply upon remand. Of course, the district court may require the filing of further materials by the parties.